VENABLE LLP
Sarah S. Brooks (SBN 266292)
ssbrooks@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:  (310) 229-9900
Facsimile:  (310) 229-9901

Frank M. Gasparo (Admitted *Pro Hac Vice*)
Ralph A. Dengler (Admitted *Pro Hac Vice*)
Andrew P. MacArthur (SBN 324997)
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Email: fmgasparo@venable.com
         radengler@venable.com
         apmacarthur@venable.com
Telephone:  (212) 307-5500
Facsimile:  (212) 307-5598

*Attorneys for Defendants/Counter-Claimants*
*FriendFinder Networks Inc. and Streamray*
*Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WAG ACQUISITION, L.L.C., | Case No. 19-cv-05036-JD |
| Plaintiff, | Honorable James Donato<br>Courtroom 11 |
| v. | **CORRECTED[1] FURTHER UPDATE ON REEXAMS** |
| FRIENDFINDER NETWORKS INC., et al., | |
| Defendants. | |

---

[1] FriendFinder hereby corrects Dkt. No. 231 to update the below table entry No. 1 to reflect that the defendants there have moved to stay claim construction and *Markman* proceedings only; and FriendFinder updated table entries Nos. 2-3 to reflect the correct year, 2021.

Defendants/Counter-Claimants FriendFinder Networks Inc. and Streamray Inc. (collectively, "FriendFinder") hereby advise the Court in furtherance of Dkt. Nos. 226-231 that FriendFinder filed on December 10, 2021 a petition with the United States Patent and Trademark Office ("USPTO") under 37 CFR §§ 1.515(c) and 1.181, seeking to reverse its denial of *ex parte* reexamination no. 90/014,835 pertaining to U.S. Patent No. 8,185,611. The USPTO's prior orders granting FriendFinder's three *ex parte* reexaminations and prior denial, including the above petition, are attached in Exhibits A-D (and referenced below).

FriendFinder also provides the summary table below of the current and resolved or terminated litigations, *ex parte* reexaminations, and *inter partes* reviews for the asserted patents in this action (*i.e.*, U.S. Patent Nos. 8,122,141; 8,327,011; 8,185,611; and 8,364,839) and related patents (*e.g.*, U.S. Patent Nos. 9,742,824; 9,729,594; and 9,762,636).

| CURRENT LITIGATIONS AND *EX PARTE* REEXAMINATIONS | | | | |
|---|---|---|---|---|
| No. | Case Caption | Court | Patent(s) | Status |
| 1 | *WAG Acquisition, L.L.C. v. Flying Crocodile, Inc. et al.*, No. 2:19-cv-01278-BJR | WDWA (transferred from DNJ) | 8,122,141 8,327,011 8,185,611 8,364,839 | On December 10, 2021, the Court granted the Parties' request to extend damages discovery until January 28, 2022. Dkt. Nos. 282-283. Defendants Accretive Technology Group, Inc., ICF Technology Inc. and Riser Apps LLC have moved to stay the claim construction and *Markman* proceedings based on the *ex* |

| 1 | | | | *parte* reexaminations which WAG has opposed. Dkt. Nos. 274-278, 281, 284. Those defendants are not seeking a stay of factual discovery as to damages. |
|---|---|---|---|---|
| | | | | *Markman* briefing is under submission as of April 14, 2021.  Dkt. Nos. 262-270. |
| 2 | *WAG Acquisition, L.L.C. v. Amazon.com, Inc. et al*, 6:21-cv-00815-ADA | WDTX | 9,742,824 9,729,594 9,762,636 | Complaint filed on August 6, 2021.  Dkt. No. 1. |
| | | | | On November 1, 2021, Amazon answered. Dkt. No. 22. |
| | | | | On December 6, 2021, the Parties filed a motion for entry of a proposed Scheduling Order.  Dkt. Nos. 27-28. |
| 3 | *WAG Acquisition, L.L.C. v. Google LLC et al*, 6:21-cv-00816-ADA | WDTX | 9,742,824 9,729,594 9,762,636 | Complaint filed on August 6, 2021.  Dkt. No. 1. On November 1, 2021, Google filed a motion to |

| | | | | |
|---|---|---|---|---|
| | | | | dismiss, which WAG opposed on November 15, 2021. Dkt. Nos. 17, 30-32.<br><br>On December 6, 2021, the Parties filed a motion for entry of a proposed Scheduling Order. Dkt. No. 33-34. |
| 4 | *WAG Acquisition, L.L.C. v. Netflix, Inc.*, 6:21-cv-01083-ADA | WDTX | 9,742,824<br>9,729,594 | Complaint and Amended Complaint filed on October 18, 2021. Dkt. Nos. 1, 8.<br><br>Netflix's answer or response is due January 7, 2022.  Dkt. No. 24.[2] |
| 5 | *WAG Acquisition, L.L.C. v. The Walt Disney Company et al*, 2:21-cv-08230-JAK-E | CDCA | 9,742,824<br>9,729,594<br>9,762,636[3] | Complaint filed October 18, 2021.  Dkt. No. 1.<br><br>Waivers of Service of Summons executed; answer or response due January 28, |

[2] Venable represents Netflix in this litigation; it previously represented Multi Media, WMM, and WebPower.

[3] The Prayer for Relief, however, refers to purported infringement of two patents (*i.e.*, U.S. Patent No. 9,742,824 and 9,729,594) but purported damages on a different two patent group (*i.e.*, U.S. Patent No. 9,742,824 and 9,762,636).  *See* Dkt. No. 1, at 14.

| | | | | |
|---|---|---|---|---|
| | | | | 2022.  Dkt. Nos. 44-46. |
| 6 | *WAG Acquisition, LLC v. Hulu LLC,* 2:21-cv-08242-MCS-AFM | CDCA | 9,742,824 9,729,594[4] | Complaint filed October 18, 2021.  Dkt. No. 1.<br><br>Waiver of Service of Summons executed; answer or response due January 28, 2022.  Dkt. Nos. 36-37. |
| 7 | *Ex Parte* Reexamination, Control Number: 90/014,833. | USPTO | 8,327,011 | Reexamination Ordered on November 16, 2021.  *See* Exhibit A. |
| 8 | *Ex Parte* Reexamination, Control Number: 90/014,834. | USPTO | 8,122,141 | Reexamination Ordered on September 21, 2021.  *See* Exhibit B. |
| 9 | *Ex Parte* Reexamination, Control Number: 90/014,835. | USPTO | 8,185,611 | Reexamination denied on November 12, 2021.  *See* Exhibit C, including the petition for reversal.<br><br>FriendFinder filed a petition for reversal of this denial. |
| 10 | *Ex Parte* Reexamination, Control Number: 90/014,836. | USPTO | 8,364,839 | Reexamination Ordered on September 30, 2021.  *See* Exhibit D. |
| | **RESOLVED OR TERMINATED LITIGATIONS AND** | | | |

---

[4] The Prayer for Relief, however, references three patents (*i.e.*, 9,742,824, 9,729,594, and 9,762,636).  *See* Dkt. No. 1, at 11.

| | | INTER PARTES REVIEWS | | |
|---|---|---|---|---|
| 11 | *WAG Acquisition, L.L.C. v. Gattyàn Group S.à r.l. et al.*, No. 2:14-cv-2832-ES-MAH | DNJ | 8,122,141 8,327,011 8,185,611 8,364,839 | Dismissed with prejudice So Ordered on September 15, 2021. Dkt. No. 310.<br><br>The Parties had completed claim construction or *Markman* briefing as of March 4, 2021. Dkt. Nos. 272-274, 281-282. |
| 12 | *WAG Acquisition, L.L.C. v. Vubeology, Inc. et al.*, No. 1:19-cv-00805-LY | WDTX (transferred from DNJ) | 8,122,141 8,327,011 | Dismissed without prejudice So Ordered on April 19, 2021. Dkt. No. 174. |
| 13 | *WAG Acquisition, L.L.C. v. Data Conversions, Inc. et al.*, No. 3:19-cv-00489-MMD-CLB | DNV (transferred from DNJ) | 8,122,141 8,327,011 | Dismissed with prejudice So Ordered on March 17, 2021. Dkt. No. 278. |
| 14 | *WAG Acquisition L.L.C. v. WebPower, Inc. et al.*, No. 9:19-cv-81155-RAR | SDFL (transferred from DNJ) | 8,122,141 8,327,011 8,364,839 8,185,611 | Dismissed with prejudice So Ordered on February 7, 2021. Dkt. No. 191. |
| 15 | *WAG Acquisition, LLC v. Multi Media, L.L.C. et al.*, No. 2:19-cv-07076-JAK-GJS | CDCA (transferred from DNJ) | 8,122,141 8,327,011 | Dismissed with prejudice So Ordered on January 8, 2021. Dkt. No. 266. |
| 16 | *WAG Acquisition, L.L.C. v. Sobonito Investments, Ltd. et al.*, No. 2:14-cv-1661-ES-MAH | DNJ | 8,122,141 8,327,011 8,185,611 8,364,839 | Dismissed with prejudice So Ordered on September 8, 2020. Dkt. No. 213. |
| 17 | *WAG Acquisition, L.L.C. v. Gamelink Int'l Ltd. et al.*, No. 2:15-cv-3416-ES-MAH | DNJ | 8,122,141 8,327,011 | Notice of dismissal So |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Ordered on November 8, 2018.  Dkt. No. 56. |
| | 18 | *WAG Acquisition, L.L.C. v. MFCXY, Inc. et al.*, No. 2:14-cv-3196-ES-MAH | DNJ | 8,122,141 8,327,011 8,364,839 8,185,611 | Stipulation of dismissal So Ordered on May 8, 2015.  Dkt. No. 48. |
| | 19 | *WAG Acquisition, L.L.C. v. XM Satellite Radio, Inc.* et al, No. 1:08-cv-06357-RMB-MHD | SDNY | 6,766,376 | Stipulation of dismissal So Ordered on February 9, 2009.  Dkt. No. 33. |
| | 20 | *WebPower et al. v. WAG Acquisition LLC*, IPR2016-01238[5] | PTAB | 8,122,141 | The PTAB found on July 16, 2020 claims 10–18 unpatentable in a final written decision, which was not appealed by WAG.  Final Written Decision on Remand, *WebPower v. WAG Acquisition*, IPR2016-01238, Paper No. 28 (Jul. 16, 2020).  Previously claims 19-23 were found invalid and not appealed. *WAG Acquisition, LLC v. WebPower*, Inc., 781 F. App'x 1007, |

---

[5] IPR2017-00820 and IPR2017-00786 were joined with IPR2016-01238.

| | | | | |
|---|---|---|---|---|
| | | | | 1009 n.2 (Fed. Cir. 2019) ("The Board also instituted review of claims 19-23 on multiple grounds. WAG has not challenged the Board's unpatentability determinations with respect to these claims.") |
| 21 | *WebPower et al. v. WAG Acquisition L.L.C.*, IPR2016-01239[6] | PTAB | 8,364,839 | On December 26, 2017 (Paper No. 21), the PTAB found claims 5, 12, and 19 unpatentable in a final written decision.  Final Written Decision, *WebPower v. WAG Acquisition*, IPR2016-01239, Paper No. 21 (Dec. 26., 2017).  On August 26, 2019, the Federal Circuit issued a Fed. Cir. R. 36 affirmance. *See WAG Acquisition, LLC v. WebPower, Inc.*, 2019 U.S. App. LEXIS 25497, at *1 |

---

[6] IPR2017-00784 and IPR2017-00785 were joined with IPR2016-01239.

| | | | | |
|---|---|---|---|---|
| | | | | (Fed. Cir. Aug. 26, 2019). |
| 22 | *Duodecad IT Services Luxembourg S.à r.l. et al v. WAG Acquisition L.L.C.*, IPR2015-01036 | PTAB | 8,364,839 | On October 20, 2016, the PTAB found claims 1, 3, 4, 6, 8, 10, 11, 13, 15, 17, 18, and 20 unpatentable in a final written decision, which was not appealed by WAG.  Final Written Decision, *Duodecad IT Services Luxembourg S.à r.l. et al v. WAG Acquisition*, IPR2015-01036, Paper No. 17, at 43 (Oct. 20, 2016). |
| 23 | *Duodecad IT Services Luxembourg S.à r.l. et al v. WAG Acquisition L.L.C.*, IPR2015-01035 | PTAB | 8,185,611 | Denied institution. |
| 24 | *FriendFinder Networks Inc. et al. v. WAG Acquisition L.L.C.*, IPR2015-01037 | PTAB | 8,122,141 | Denied institution. |
| 25 | *FriendFinder Networks Inc. et al. v. WAG Acquisition L.L.C.*, IPR2015-01033 | PTAB | 8,327,011 | Denied institution. |
| 26 | *WebPower v. WAG Acquisition L.L.C.*, IPR2016-01161 | PTAB | 8,327,011 | Denied institution. |
| 27 | *WebPower v. WAG Acquisition L.L.C.*, IPR2016-01162 | PTAB | 8,185,611 | Denied institution. |
| 28 | *I.M.L. SLU v. WAG Acquisition L.L.C.*, IPR2016-01655 | PTAB | 8,327,011 | Denied institution. |
| 29 | *I.M.L. SLU v. WAG Acquisition L.L.C.*, IPR2016-01656 | PTAB | 8,122,141 | Terminated. *See* Dismissing Petition and Petitioner's Motion for Adverse Judgment, *I.M.L. SLU et* |

9

| | | | | | |
|---|---|---|---|---|---|
| | | | | | *al. v. WAG Acquisition*, IPR2016-01658, Paper No. 46 (Feb. 27, 2018) (discussing termination reasons regarding U.S. Patent No. 8,364,839). |
| 30 | *I.M.L. SLU v. WAG Acquisition L.L.C.*, IPR2016-01657 | | PTAB | 8,185,611 | Denied institution. |
| 31 | *I.M.L. SLU v. WAG Acquisition L.L.C.*, IPR2016-01658[7] | | PTAB | 8,364,839 | Terminated (Paper No. 46 as discussed above).<br><br>Also, IPR2017-01179 joinder was vacated. |

DATE:  December 16, 2021          VENABLE LLP

By:     _/s/ Sarah S. Brooks_
Sarah S. Brooks
Frank M. Gasparo (Admitted *Pro Hac Vice*)
Ralph A. Dengler (Admitted *Pro Hac Vice*)
Andrew P. MacArthur
*Attorneys for Defendants/Counter-Claimants*
*FriendFinder Networks Inc. and Streamray Inc.*

---

[7] IPR2017-01179 was joined with IPR2016-01658.

EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/014,833 | 08/25/2021 | 8327011 | 125737.538655 | 1250 |

7590   11/16/2021

ERNEST D. BUFF
ERNEST D. BUFF & ASSOCIATES, LLC
231 SOMERVILLE ROAD
BEDMINSTER, NJ 07921

| EXAMINER |
|---|
| WASSUM, LUKE S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/16/2021 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

VENABLE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-3800

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/014,833* .

PATENT UNDER REEXAMINATION  *8327011* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| ***Order Granting Request For Ex Parte Reexamination*** | Control No. 90/014,833 | | Patent Under Reexamination 8327011 | |
|---|---|---|---|---|
| | Examiner Luke S Wassum | | Art Unit 3992 | AIA (FITF) Status No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>08/25/2021</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐   PTO-892,       b)☑   PTO/SB/08,     c)☐   Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /ANGELA M LIE/ Primary Examiner, Art Unit 3992 | | /LUKE S WASSUM/ Primary Examiner, Art Unit 3992 |
|---|---|---|

cc:Requester ( if third party requester )

Application/Control Number: 90/014,833                                                     Page 2
Art Unit: 3992

## Decision Granting *Ex Parte* Reexamination

A substantial new question of patentability affecting claims 1 and 4 of United

States Patent Number 8,327,011 ("the '011 patent") is raised by the request for *Ex Parte*

Reexamination filed 25 August 2021 ("the Request").  Claims 1 and 4 are subject to

reexamination.

The application which issued as the '011 patent was application no. 13/374,942

("the '942 application"), filed 24 January 2012.

## Priority

The '011 patent is a continuation of U.S. Patent Application 12/800,152, filed 10

May 2010, now U.S. Patent 8,122,141, which is a continuation of U.S. Patent Application

10/893,814, filed 19 July 2004, now U.S. Patent 7,716,358, which is a continuation-in-part

of U.S. Patent Application 09/819,337, filed 28 March 2001, now U.S. Patent 6,766,376.

The '011 patent also claims priority under 35 U.S.C. § 119(e) to U.S. Provisional

Application 60/231,997, filed 12 September 2000.

Therefore, the earliest claimed priority date of the '011 application is 12

September 2000, *to the extent that the claimed subject matter is fully supported.*

Application/Control Number: 90/014,833                                          Page 3
Art Unit: 3992

## Claim Interpretation

The Office notes that the '011 patent contains a specific reference to several

earlier filed applications to which priority is claimed under 35 U.S.C. § 120. Therefore,

since the patent term is twenty years from the filing date of the earliest such application

(in this case, 28 March 2001), the '011 patent expired as of 28 March 2021.

In a reexamination proceeding involving claims of an expired patent, claim

construction pursuant to the principle set forth by the court in *Phillips v. AWH Corp.*, 415

F.3d 1303, 1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) (words of a claim "are generally

given their ordinary and customary meaning" as understood by a person of ordinary

skill in the art in question at the time of the invention) should be applied since the

expired claim are not subject to amendment. See *Ex parte Papst-Motoren*, 1 USPQ2d 1655

(Bd. Pat. App. & Inter. 1986).

Upon review of the original specification and prosecution history, the examiner

has found no instance of lexicographic definitions, either express or implied, that are

inconsistent with the ordinary and customary meaning of the respective terms.

Therefore, for the purposes of claim interpretation, the examiner concludes that there

are no claim terms for which Patent Owner is acting as their own lexicographer. See

MPEP § 2111.01.IV.

Application/Control Number: 90/014,833                              Page 4
Art Unit: 3992

## The Claimed Invention

The invention provides a system for distributing via the Internet streaming media composed of a plurality of time-sequenced data elements.  The system has a server connected to the Internet for transmitting the data elements.  Associated with the server are a buffer manager and a FIFO buffer for storing at least one of the data elements for transmission.  The buffer manager comprises means for: receiving the media data; supplying media data in order to the FIFO buffer; supplying the FIFO buffer with a predetermined number of data elements; maintaining a pointer into the buffer for each user computer indicating the last media data element that has been sent to that user, thus indicating the next element or elements to be sent; and, once the FIFO buffer is full, deleting the oldest data elements in the buffer as new data elements are received, said means arranged to maintain the pre-determined number of data elements in the FIFO buffer.  At least one user computer is connected to the server via the Internet or other data communications medium.

The server buffer manager, or the media source, provides for sequentially numbering the media data elements. The server buffer manager does not maintain a pointer into the server buffer for each user.  Instead, the media player buffer manager in the user computer maintains a record of the serial number of the last data element that has been received.  Via the use of standard data communications protocol techniques

Application/Control Number: 90/014,833                                         Page 5
Art Unit: 3992

such as TCP, the user computer transmits a request to the server to send one or more

data elements, specifying the serial numbers of the data elements. The server responds

by sending the requested data elements, and depends upon the reliable transmission

protocol to assure delivery. The user computer then continues with additional data

requests for the duration of playing the audio/video material. In this manner, the user

computer, not the server, maintains the record of the highest data element number

stored in the user computer buffer. The media data will be transmitted to the user

computer as fast as the data connection between the user computer and the server will

allow.

### Relevant Prosecution History

The '942 application was originally filed with claims 1-4. The examiner issued a

first action allowance on 7 June 2012. The examiner cited as reasons for allowance, the

following limitations:

A media player for receiving an audio or video program, the program

comprising media data elements, from a media source over an Internet protocol

network, and playing the program for a user of the media player, wherein each of the

media elements is associated with a serial number, comprising:

Application/Control Number: 90/014,833                                      Page 6
Art Unit: 3992

instructions to implement a player buffer manager, for managing a player buffer

established in the memory, operable to maintain a record of the serial number of the last

media data element that has been received and stored in the player buffer; and

instructions to cause the media player to transmit to the media source a request

to send one or more media data elements, each identified by a serial number, and to

repeat transmitting the requests to the media source for sequential media data elements

so as to maintain the pre-determined number of media data elements in the player

buffer until the last media data element comprising the program has been received.

## Information Disclosure Statement

Applicants' Information Disclosure Statement (IDS), filed 25 August 2021, has

been received and entered into the record.  Since the IDS complies with the provisions

of MPEP § 2280, the references cited therein have been considered by the examiner.

See attached form PTO-1449.

## The Substantial New Question of Patentability

The standard for establishing a Substantial New Question of Patentability is

defined in the following sections of the MPEP:

Application/Control Number: 90/014,833                                        Page 7
Art Unit: 3992

MPEP § 2242(I) provides, in pertinent part:

> A prior art patent or printed publication raises a substantial question
> of patentability where there is a substantial likelihood that a
> reasonable examiner would consider the prior art patent or printed
> publication important in deciding whether or not the claim is
> patentable.

Over the course of the original prosecution of the '942 application, the

limitations that were not found in the prior art were

A media player for receiving an audio or video program, the program

comprising media data elements, from a media source over an Internet protocol

network, and playing the program for a user of the media player, wherein *each of the

media elements is associated with a serial number*, comprising:

instructions to implement a player buffer manager, for managing a player buffer

established in the memory, operable to *maintain a record of the serial number of the last

media data element that has been received and stored in the player buffer*; and

instructions to cause the media player to *transmit to the media source a request to

send one or more media data elements, each identified by a serial number, and to repeat

transmitting the requests to the media source for sequential media data elements so as to*

Application/Control Number: 90/014,833                                    Page 8
Art Unit: 3992

*maintain the pre-determined number of media data elements in the player buffer until the last*

*media data element comprising the program has been received.*

Thus, prior art which teaches or suggests the above-cited claim features would

raise a Substantial New Question of Patentability with respect to claims 1 and 4 of the

'011 patent.

## Prior Art Cited in the Request

The following reference was cited by the third party Requester in the Request for

*Ex Parte* Reexamination:

U.S. Patent 7,529,806 to Shteyn ("**Shteyn**")

U.S. Patent 6,005,600 to Hill ("**Hill**")

U.S. Patent 6,175,862 to Feig et al. ("**Feig**")

U.S. Patent 6,389,473 to Carmel et al. ("**Carmel**")

U.S. Patent 6,792,468 to Bloch et al. ("**Bloch**")

International Application WO 1997044942 to Kliger et al. ("**Kliger**")

U.S. Patent 5,987,510 to Imai et al. ("**Imai**")

U.S. Patent 5,793,980 to Glaser et al. ("**Glaser**")

Application/Control Number: 90/014,833                                    Page 9
Art Unit: 3992

## Proposed Substantial New Question of Patentability

*Ex Parte* Reexamination of claims 1 and 4 of the '011 patent has been requested,

based upon the following issues presented in the form of proposed claim rejections:

Issue 1: Whether claims 1 and 4 are anticipated under 35 U.S.C. § 102(e) in view

of **Shteyn**.

Issue 2: Whether claims 1 and 4 are obvious under 35 U.S.C. § 103(a) in view of

**Shteyn** and **Carmel**, **Glaser**, or **TCP**[1].

Issue 3: Whether claims 1 and 4 are anticipated under 35 U.S.C. § 102(e) in view

of **Hill** or obvious under 35 U.S.C. § 103(a) in view of **Hill** and **Carmel**, **Glaser**, or **TCP**[2].

Issue 4: Whether claims 1 and 4 are obvious under 35 U.S.C. § 103(a) in view of

**Shteyn** and **Hill**.

Issue 5: Whether claims 1 and 4 are anticipated under 35 U.S.C. § 102(e) in view

of **Feig** or obvious under 35 U.S.C. § 103(a) in view of **Feig** and **Carmel**, **Glaser**, or

**TCP**[3].

Issue 6: Whether claims 1 and 4 are anticipated under 35 U.S.C. § 102(e) in view

of **Carmel** or obvious under 35 U.S.C. § 103(a) in view of **Carmel** and **Hill**.

---

[1] The '011 patent discloses at 5:63-6:16 that the TCP protocol was well-known for proper data delivery from a server to a client and that media players, including client buffers, were well-known for playback.
[2] *Id.*
[3] *Id.*

Application/Control Number: 90/014,833                                        Page 10
Art Unit: 3992

<u>Issue 7</u>: Whether claims 1 and 4 are anticipated under 35 U.S.C. § 102(e) in view of **Bloch** or obvious under 35 U.S.C. § 103(a) in view of **Bloch** and **Carmel**, **Glaser**, or **TCP**[4].

<u>Issue 8</u>: Whether claims 1 and 4 are anticipated under 35 U.S.C. § 102(b) in view of **Kliger**.

<u>Issue 9</u>: Whether claims 1 and 4 are obvious under 35 U.S.C. § 103(a) in view of **Imai** and **Carmel**, **Glaser**, or **TCP**[5].

### Analysis

The Examiner agrees that based upon the following analysis, the teachings of the cited prior art raises a substantial new question of patentability with regard to claims 1 and 4 of the '011 patent.

<u>Issue 1</u>: **Shteyn**

**Shteyn** raises a substantial new question of patentability with respect to claims 1 and 4 of the '011 patent, for the reasons discussed below.

---

[4] *Id.*
[5] *Id.*

Application/Control Number: 90/014,833                                                          Page 11
Art Unit: 3992

With respect to claim 1, **Shteyn** discloses a computer with media player

software, including Java, for playing streaming media (Abstract, 4:32-44.)  **Shteyn** also

discloses that the server partitions a file into a sequence of media segments and creates

a control file listing those segments (Abstract, 1:65-2:7).

**Shteyn** further discloses that the segments in the control file are associated with

a serial number, such as the XML tags <part1> etc., as illustrated in Fig. 2:

Application/Control Number: 90/014,833                                          Page 12
Art Unit: 3992

```
<XML>
    <title>
    The best ever music
    </title>
    <artist>
    V.R. Famous
    </artist>
    <parts>                          (Preferred format)
        <part1>
            <length> 1024 </length>
            <format> MP3 </format>
            <location> ftp://137.27.52.87 </location>
            <min_bandwidth> 10,000 </min_bandwidth>
        </part1>

                                     (Alternative format)
        </part1_alt>
            <length> 512 </length>
            <format> OTHER </format>
            <location> http:// yevgeniynel/ .... </location>
            <min_bandwidth> 8,000 </min_bandwidth>
        </part_alt1>

        ........<<<<>>>

    </parts>
</XML>
```

# FIG. 2

The media player then uses the control file to sequentially request each segment
by serial number (such as part 1, etc.) over the Internet (4:28-31). After downloading,
the buffered content of the first segment is forwarded to a decoding/playing module
such that the rendering of the first segment is started (2:64-3:16).

Application/Control Number: 90/014,833                                          Page 13
Art Unit: 3992

Thus, **Shteyn** discloses the claimed media player for receiving an audio or video program, the program comprising media data elements, from a media source over an Internet protocol network, and playing the program for a user of the media player, wherein *each of the media elements is associated with a serial number.*

**Shteyn** additionally discloses the claimed media player buffer manager. Specifically, file segments are downloaded at a client and stored in a buffer in a sequence or linked list of buffers (3:14-27). The buffer manager maintains a record of the serial number of the last element received and stored in the buffer such that while the first segment is being rendered, a request is issued to download and buffer the next sequential segment so that it is available when the rendering of the first segment is completed (Abstract; 3:3-16; 3:47-56).

Thus, **Shteyn** discloses the claimed *instructions to implement a player buffer manager, for managing a player buffer established in the memory, operable to maintain a record of the serial number of the last media data element that has been received and stored in the player buffer.*

**Shteyn** additionally discloses the claimed transmission of media data element requests from the media player to the media source.

Application/Control Number: 90/014,833                                    Page 14
Art Unit: 3992

As discussed above, **Shteyn** discloses a media player transmitting to the media

source a request to send one or more media data elements, each identified by a serial

number (Abstract; 2:57-59; 3:3-16; 3:44-4:14; 4:28-31; claims 1, 15, Figs. 1 & 2).

**Shteyn** also discloses repeating these requests to maintain the pre-determined

number of media data elements in the player buffer until the last media data element

comprising the program has been received, in the flowchart of Fig. 1, and specifically

illustrated in the looping execution of steps 110 and 112 and described at 3:8-36:



FIG. 1

Application/Control Number: 90/014,833                                    Page 15
Art Unit: 3992

Thus, **Shteyn** discloses the claimed instructions to cause the media player to
transmit to the media source a request to send one or more media data elements, each identified
by a serial number, and to repeat transmitting the requests to the media source for sequential
media data elements so as to maintain the pre-determined number of media data elements in the
player buffer until the last media data element comprising the program has been received.

In light of these teachings, there is a substantial likelihood that a reasonable
examiner would consider **Shteyn** important in deciding whether or not claims 1 and 4
of the '011 patent are patentable.

The teachings of **Shteyn** are new and non-cumulative with respect to the
teachings of the prior art applied during the prosecution of the '011 application.
Furthermore, the teachings of **Shteyn** have not been considered in a final holding of
invalidity by a federal court.  Accordingly, **Shteyn** raises a substantial new question of
patentability with regard to claims 1 and 4 that has not been decided in a previous
examination, reexamination, or other proceeding before the Office.

Application/Control Number: 90/014,833                                        Page 16
Art Unit: 3992

Issue 2: **Shteyn** in view of **Carmel**, **Glaser**, or **TCP**

The combination of **Shteyn** in view of **Carmel**, **Glaser**, or **TCP** raises a

substantial new question of patentability with respect to claims 1 and 4 of the '011

patent, by virtue of the inclusion of **Shteyn** (a reference which by itself raises a

substantial new question of patentability as discussed above with respect to Issue 1).

Issue 3: **Hill** in view of **Carmel**, **Glaser**, or **TCP**

The combination of **Hill** in view of **Carmel**, **Glaser**, or **TCP** raises a substantial

new question of patentability with respect to claims 1 and 4 of the '011 patent, for the

reasons discussed below.

With respect to claim 1, **Hill** discloses a media player receiving a clip or clips in a

sequence of frames over the Internet and playing those frames (1:7-11; 3:46-56; 3:28-32;

3:37-39). **Hill** also discloses that the media player requests each frame by the frame

number, where each frame is associated with a frame or serial number (7:43-50; 5:64-

6:16; 12:7-13). This is also illustrated in Figs. 6B and 7:

Application/Control Number: 90/014,833                                    Page 17
Art Unit: 3992



Thus, **Hill** discloses the claimed *media player for receiving an audio or video program, the program comprising media data elements, from a media source over an Internet protocol network, and playing the program for a user of the media player, wherein each of the media elements is associated with a serial number.*

**Hill** also discloses that the media player [buffer manager] maintains a record of the last frame number received because the media player [buffer manager] uses the last frame number received to request the next frame number (10:4-6).  **Hill** also provides an example of the buffer manager recording frame numbers, including the last one received, and using that last frame number to request the next frame number (7:39-50).

Application/Control Number: 90/014,833                                   Page 18
Art Unit: 3992

**Hill** additionally discloses that the buffer manager maintains a history of the

frames received, including the last one received (7:1-2; 10:55-60; 11:42-45).  This frame

history is illustrated in Figs. 5(a) and 6(b):



Thus, **Hill** discloses the claimed *instructions to implement a player buffer*

*manager, for managing a player buffer established in the memory, operable to maintain*

*a record of the serial number of the last media data element that has been received and stored in*

*the player buffer.*

**Hill** additionally discloses that the buffer manager repeats requests for frames to

maintain a specified number of frames in the player buffer or "request threshold" (9:40-

Application/Control Number: 90/014,833                                                    Page 19
Art Unit: 3992

44; 6:58-67; 5:52-54; 7:39-43; claims 8 & 9).  This predetermined number is maintained for

the duration of the program or movie (3:46-47; 6:63-67; 11:37-40; 5:63-65; 11: 63-12:2).


         Thus, **Hill** discloses the claimed *instructions to cause the media player to*

*transmit to the media source a request to send one or more media data elements, each identified*

*by a serial number, and to repeat transmitting the requests to the media source for sequential*

*media data elements so as to maintain the pre-determined number of media data elements in the*

*player buffer until the last media data element comprising the program has been received.*


         In light of these teachings, there is a substantial likelihood that a reasonable

examiner would consider **Hill**, either alone or in combination with the other cited

references, important in deciding whether or not claims 1 and 4 of the '011 patent are

patentable.

         The teachings of **Hill** are new and non-cumulative with respect to the teachings

of the prior art applied during the prosecution of the '011 application.  Furthermore, the

teachings of **Hill** have not been considered in a final holding of invalidity by a federal

court.  Accordingly, **Hill** raises a substantial new question of patentability with regard

to claims 1 and 4 that has not been decided in a previous examination, reexamination,

or other proceeding before the Office.

Issue 4: **Shteyn** in view of **Hill**

The combination of **Shteyn** in view of **Hill** raises a substantial new question of patentability with respect to claims 1 and 4 of the '011 patent, by virtue of the inclusion of **Shteyn** or **Hill** (both reference which by themselves raise a substantial new question of patentability as discussed above with respect to Issues 1 and 3).

Issue 5: **Feig** in view of **Carmel**, **Glaser**, or **TCP**

The combination of **Feig** in view of **Carmel**, **Glaser**, or **TCP** raises a substantial new question of patentability with respect to claims 1 and 4 of the '011 patent, for the reasons discussed below.

With respect to claim 1, **Feig** discloses a server that creates a file with a sequential list of URLs, each representing a video segment (Abstract; 6:18-20).  The list of unique URLs is shown in Fig. 1:

Application/Control Number: 90/014,833                                      Page 21
Art Unit: 3992



# FIG. 1

**Feig** additionally discloses the use of a new data type, a URL sequence (URLS), and that that the URLS consist of a header, containing a header file, and an ordered list of URLs(j) where j is an index ranging from 1 to n (3:20-22). Each media segment in the URL file listing is associated with a serial number as illustrated in Fig. 1 (2:54-59; 1:56-57; 6:18-20; 1:41-43; 1:62-65). The media player sequentially requests and plays each video segment by URL or serial number over the Internet (Abstract; 2:60-61; 5:16-18; 4:1-5; 5:47-50; 1:6-11; 6:18-20; 2:1-3).

Thus, **Feig** discloses the claimed *media player for receiving an audio or video program, the program comprising media data elements, from a media source over an Internet protocol network, and playing the program for a user of the media player, wherein each of the media elements is associated with a serial number.*

**Feig** also discloses a player buffer manager of operating system and/or application programs (e.g., browser) to manage the requesting and buffering segments by serial number (4:10-15; 3:49-50; 6:34-38). **Feig** also discloses a player buffer manager that stores each requested segment with the serial number in alternating buffers

Application/Control Number: 90/014,833                                      Page 22
Art Unit: 3992

(BUFF_A and BUFF_B) (6:34-38; 5:16-23; 5:24-36; claim 11).  This buffering or recording

of the last media data element in the two buffers continues until the end of the program

(5:24-36).

Thus, **Feig** discloses the claimed *instructions to implement a player buffer*

*manager, for managing a player buffer established in the memory, operable to maintain*

*a record of the serial number of the last media data element that has been received and stored in*

*the player buffer.*


**Feig** also discloses transmitting a request by serial number from the URL listing

to the server for the media segment and repeating such requests by serial number for

the other sequential segments for the duration of the program (Abstract; 2:60-67; 5:16-

23; 5:30-36; 5:37-43; claim 11; Fig. 4).  The requests are repeated to maintain a

predetermined number of media data elements in the player buffer until the last media

data element comprising the program has been received because **Feig** repeatedly

requests two segments (one after another) and stores them in alternating buffers,

BUFF_A and BUFF_B (claim 1; 5:16-23; 5:30-36; Fig. 4:

Application/Control Number: 90/014,833                                              Page 23
Art Unit: 3992



Thus, **Feig** discloses the claimed *instructions to cause the media player to transmit to the media source a request to send one or more media data elements, each identified by a serial number, and to repeat transmitting the requests to the media source for sequential media data elements so as to maintain the pre-determined number of media data elements in the player buffer until the last media data element comprising the program has been received.*

In light of these teachings, there is a substantial likelihood that a reasonable examiner would consider **Feig**, either alone or in combination with the other cited

Application/Control Number: 90/014,833                                      Page 24
Art Unit: 3992

references, important in deciding whether or not claims 1 and 4 of the '011 patent are

patentable.

 The teachings of **Feig** are new and non-cumulative with respect to the teachings

of the prior art applied during the prosecution of the '011 application.  Furthermore, the

teachings of **Feig** have not been considered in a final holding of invalidity by a federal

court.  Accordingly, **Feig** raises a substantial new question of patentability with regard

to claims 1 and 4 that has not been decided in a previous examination, reexamination,

or other proceeding before the Office.

 Issue 6: **Carmel** in view of **Hill**

 The combination of **Carmel** in view of **Hill** raises a substantial new question of

patentability with respect to claims 1 and 4 of the '011 patent, for the reasons discussed

below.

 With respect to claim 1, **Carmel** discloses the client's browser and/or media

player downloading and playing streaming media consisting of slices (7:13-17; 10:28-35;

3:66-4:1; 10:24-27).  **Carmel** further discloses that the media player receives the media

data over the Internet from the server (2:1-15; 7:5-9).  Each of the media data elements or

Application/Control Number: 90/014,833                                    Page 25
Art Unit: 3992

slices is associated with a serial number (9:66-10:1; 2:4-7; 7:22-26).  Fig. 3A illustrates the

media elements/slices:



Thus, **Carmel** discloses the claimed *media player for receiving an audio or video*

*program, the program comprising media data elements, from a media source over an*

*Internet protocol network, and playing the program for a user of the media player,*

*wherein each of the media elements is associated with a serial number.*


**Carmel** additionally discloses a buffer manager consisting of a Java applet and/or

browser which manages or controls the player buffer in memory, including the

downloading, decoding, and playing of slices (10:25-35; 7:4-17; Fig. 6A).  **Carmel's** client

or Java applet maintains a record of the serial number of the last data element received

in the buffers, including the client downloading and maintaining numbered slices "42,

44, and 46, etc." (10:27-50; 2:17-21; 7:37-40).  Carmel also maintains a record of the serial

Application/Control Number: 90/014,833                                    Page 26
Art Unit: 3992

number of the last media data element that has been received and stored in the player

buffer because it discloses a graphical slider on the client that records which slices were

downloaded, including the last one or "most recent slice," and which slices to

download next (8:32-36; 8:18-26; 10:27-48).  Fig. 3 illustrates the graphical slider:



FIG. 3C

Thus, **Carmel** discloses the claimed *instructions to implement a player buffer*

*manager, for managing a player buffer established in the memory, operable to maintain*

*a record of the serial number of the last media data element that has been received and stored in*

*the player buffer.*

**Carmel** discloses that the media player requests a predetermined number of

slices (e.g., one, two, or five slices) by serial number and repeats those requests (3:5-9;

7:59-8:5; 8:18-31; 8:56-62; 10:25-50; 10:64-11:8; claim 10, Figs. 3C & 3D).  **Carmel** repeats

Application/Control Number: 90/014,833                                          Page 27
Art Unit: 3992

these requests to maintain a specified number of slices given the player buffer "keeps

up" with the transmission of slices for uninterrupted playback (7:36-40; 10:36-54).

Separately, **Carmel** discloses maintaining specified slices in the buffer by

downloading slices of the appropriate quality level based upon available network

bandwidth (9:6-8; 11:11-22). This maintaining of specified slices continues for the

duration of the broadcast (12:46-47; 2:24-25).

Thus, **Carmel** discloses the claimed *instructions to cause the media player to*

*transmit to the media source a request to send one or more media data elements, each identified*

*by a serial number, and to repeat transmitting the requests to the media source for sequential*

*media data elements so as to maintain the pre-determined number of media data elements in the*

*player buffer until the last media data element comprising the program has been received.*

In light of these teachings, there is a substantial likelihood that a reasonable

examiner would consider **Carmel**, either alone or in combination with the other cited

reference, important in deciding whether or not claims 1 and 4 of the '011 patent are

patentable.

**Carmel** was cited during prosecution of the '011 patent, but was not discussed

on the record or utilized in rejecting the claims. Furthermore, the teachings of **Carmel**

have not been considered in a final holding of invalidity by a federal court.

Application/Control Number: 90/014,833                                        Page 28
Art Unit: 3992

Accordingly, **Carmel** raises a substantial new question of patentability with regard to

claims 1 and 4 that has not been decided in a previous examination, reexamination, or

other proceeding before the Office.

### Issue 7: **Bloch** in view of **Carmel**, **Glaser**, or **TCP**

The combination of **Bloch** in view of **Carmel**, **Glaser**, or **TCP** raises a substantial

new question of patentability with respect to claims 1 and 4 of the '011 patent, by virtue

of the inclusion of **Carmel** (a reference which by itself raises a substantial new question

of patentability as discussed above with respect to Issue 6).

### Issue 8: **Kliger**

**Kliger** raises a substantial new question of patentability with respect to claims 1

and 4 of the '011 patent, for the reasons discussed below.

With respect to claim 1, **Kliger** discloses a media player requesting and receiving

a sequence of objects (e.g., video) over the Internet as well as playing them (Abstract;

6:23-27; 9:24-29; 11:34-12:5; 7:10-12; 9:6-9).  **Kliger** further discloses that the client

application requests from the server an object map listing all objects (e.g., video, audio)

by serial number the client application seeks (7:13-22; 7:28-8:2).  Thereafter, the client

requests by identification or serial number the objects from the object map (8:16-20;

10:25-28; 8:13-15; 11:34-12:5; 12:28-30).

Thus, **Kliger** discloses the claimed media player for receiving an audio or video

program, the program comprising media data elements, from a media source over an

Internet protocol network, and playing the program for a user of the media player,

wherein each of the media elements is associated with a serial number.

**Kliger** also discloses a player buffer manager or client's "application" that

manages the buffers (9:6-9; 5:29-31; 13:23-29; 15:1-6; 7:10-12; Figs 2 & 3).  **Kliger** also

discloses maintaining a record of the last data element received.

For instance, **Kliger** describes that client 13a receives from the server objects

denoted as numeral 300 (O4, O7, O2, O12, and O3) and will buffer then denoted as

numeral 320a, including the last one received of O4, O7, O2, O12, and O3 (11:34-12:5;

12:26-30).  It is illustrated in Fig. 3:

Application/Control Number: 90/014,833                                    Page 30
Art Unit: 3992



FIG. 3

**Kliger** also discloses that client 13a already has knowledge of previously

requested objects O1 and O6 in local storage denoted as numeral 303a and client 13b

has knowledge of previously requested objects O1, O2, O7, O12, denoted as numeral

303b (10:20-26; 9:14-19), indicating that each client maintains a record of the last object

received and buffered in local storage.

Thus, **Kliger** discloses the claimed *instructions to implement a player buffer

manager, for managing a player buffer established in the memory, operable to maintain

a record of the serial number of the last media data element that has been received and stored in

the player buffer.*

**Kliger** discloses transmitting a request for a series of objects by object ID or serial number from the object map (8:16-20; 10:25-28; 8:13-15; 11:34-12:5; 12:28-30).  **Kliger** also discloses that the application repeats those requests for objects to maintain a predetermined number of objects by storing those requested or specified objects in the player buffer (8:7-15; claim 1).

As illustrated in Fig. 3, client 13a has previously requested and buffered 303a O1 and O6 while client 13b has previously requested and buffered 303b O1, O2, O7, and O12 from the object map (10:20-26; 12:20-23).  The clients will thereafter buffer these predetermined requested objects (11:34-12:5).  This continues for the duration of the program given the client requests all objects from the object map which represents the data for the client application (7:13-17; 9:6-9).

Thus, **Kliger** discloses the claimed *instructions to cause the media player to transmit to the media source a request to send one or more media data elements, each identified by a serial number, and to repeat transmitting the requests to the media source for sequential media data elements so as to maintain the pre-determined number of media data elements in the player buffer until the last media data element comprising the program has been received.*

Application/Control Number: 90/014,833                                           Page 32
Art Unit: 3992

In light of these teachings, there is a substantial likelihood that a reasonable examiner would consider **Kliger** important in deciding whether or not claims 1 and 4 of the '011 patent are patentable.

The teachings of **Kliger** are new and non-cumulative with respect to the teachings of the prior art applied during the prosecution of the '011 application. Furthermore, the teachings of **Kliger** have not been considered in a final holding of invalidity by a federal court.  Accordingly, **Kliger** raises a substantial new question of patentability with regard to claims 1 and 4 that has not been decided in a previous examination, reexamination, or other proceeding before the Office.

### Issue 9: **Imai** in view of **Carmel**, **Glaser**, or **TCP**

The combination of **Imai** in view of **Carmel**, **Glaser**, or **TCP** raises a substantial new question of patentability with respect to claims 1 and 4 of the '011 patent, by virtue of the inclusion of **Carmel** (a reference which by itself raises a substantial new question of patentability as discussed above with respect to Issue 6).

Application/Control Number: 90/014,833                                      Page 33
Art Unit: 3992

## Conclusion

As discussed above, the prior art cited in the request raises a SNQ as to the

claims of the '011 patent.  Specifically, there is a substantial likelihood that a reasonable

examiner would consider the new non-cumulative teachings of **Shteyn**, **Hill**, **Feig**,

**Carmel**, and **Kliger**, either alone or in combination with the other cited references,

regarding the claimed feature of:

A media player for receiving an audio or video program, the program

comprising media data elements, from a media source over an Internet protocol

network, and playing the program for a user of the media player, wherein *each of the*

*media elements is associated with a serial number*, comprising:

instructions to implement a player buffer manager, for managing a player buffer

established in the memory, operable to *maintain a record of the serial number of the last*

*media data element that has been received and stored in the player buffer;* and

instructions to cause the media player to *transmit to the media source a request to*

*send one or more media data elements, each identified by a serial number, and to repeat*

*transmitting the requests to the media source for sequential media data elements so as to*

*maintain the pre-determined number of media data elements in the player buffer until the last*

*media data element comprising the program has been received* (with respect to claims 1and 4),

as discussed above, to be important in deciding whether or not the claims are

patentable.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

*ex parte* reexamination proceedings "will be conducted with special dispatch" (37

CFR 1.550(a)).  Extensions of time in *ex parte* reexamination proceedings are provided

for in 37 CFR 1.550(c).

The Patent Owner is reminded of the continuing responsibility under 37 CFR

1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving U.S. Patent No. 8,327,011 throughout the course of this

reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

The Patent Owner is reminded that any proposed amendment to the

specification and/or claims in the reexamination proceeding must comply with the

provisions of 37 C.F.R. § 1.530(d)-(j), must be formally presented pursuant to 37 C.F.R. §

1.52(a) and (b), and must include any fees required by 37 C.F.R. § 1.20(c).  See MPEP §

Application/Control Number: 90/014,833                                           Page 35
Art Unit: 3992

2250(IV) for examples to assist in the preparation of proper amendments in

reexamination proceedings.

Application/Control Number: 90/014,833                                          Page 36
Art Unit: 3992

**All** correspondence relating to this *ex parte* reexamination proceeding should be

directed:

By EFS-Web:      Registered Users may submit correspondence via EFS-Web, at

                    https://efs.uspto.gov/efile/myportal/efs-registered.

By Mail to:      Mail Stop *Ex Parte* Reexam
                    Central Reexamination Unit
                    Commissioner for Patents
                    United States Patent & Trademark Office
                    P.O. Box 1450
                    Alexandria, VA 22313-1450

By FAX to:      (571) 273-9900
                    Central Reexamination Unit

By hand:      Customer Service Window
                    Randolph Building
                    401 Dulany Street
                    Alexandria, VA 22314

EFS-Web offers the benefit of quick submission to the particular area of the

Office that needs to act on the correspondence.  Also, EFS-Web submissions are "soft-

scanned" (i.e., electronically uploaded) directly into the official file for the

reexamination proceeding, which offers parties the opportunity to review the content of

their submission after the "soft scanning" process is complete.

Application/Control Number: 90/014,833                                    Page 37
Art Unit: 3992

        Any inquiry concerning this communication should be directed to the Central

Reexamination Unit at telephone number 571-272-7705.




                                        /LUKE S WASSUM/
                                        Primary Examiner, Art Unit 3992




                                        Conferees:

                                        /ANGELA M LIE/
                                        Primary Examiner, Art Unit 3992



                                        Michael Fuelling /MF/
                                        Supervisory Patent Examiner, AU 3992



lsw
4 October 2021



| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/014,833 | 8327011 |
| | Certificate Date | Certificate Number |

| Requester Correspondence Address: ☐   Patent Owner ☑   Third Party |
|---|
| VENABLE LLP<br>1290 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10104-3800 |

| **LITIGATION REVIEW** ☑ | lsw<br>(examiner initials) | 06 September 2021<br>(date) |
|---|---|---|
| Case Name | | Director Initials |
| WAG Acquisitions LLC v. Flying Crocodile, Inc. et al., 2:19cv01278 (open) | | |
| WAG Acquisitions LLC v. FriendFinder Networks Inc et al., 19cv05036 (open) | | |
| WAG Acquisitions LLC v. Gattyan Group Sarl et al., 2:14cv2832 (closed) | | |
| WAG Acquisitions LLC v. Sobonito Investments Ltd et al., 2:14cv1661 (closed) | | |
| WAG Acquisitions LLC v. Vubeology Inc. et al., 1:19cv00805 (closed) | | |
| WAG Acquisitions LLC v. WebPower Inc. et al., 1:19cv81155 (closed) | | |
| WAG Acquisitions LLC v. Data Conversions Inc. et al., 3:19cv00489 (closed) | | |
| WAG Acquisitions LLC v. Multi Media LLC et al., 2:19cv07076 (closed) | | |
| WAG Acquisitions LLC v. XM Satellite Radio Inc. et al., 1:08cv06357 (closed) | | |
| WAG Acquisitions LLC v. MFCXY Inc. et al., 2:14cv3196 (closed) | | |
| WAG Acquisitions LLC v. Gamelink Int'l LTD et al., 2:15cv3416 (closed) | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| | |

| | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/014,833 | 8327011 |
| | **Examiner** | **Art Unit** |
| | Luke S Wassum | 3992 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Reviewed Prosecution history of appn 13/374,942 | 09/27/2021 | lsw |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

Doc code: IDS                           PTO/SB/08a (01-10)
Doc description: Information Disclosure Statement (IDS) Filed

Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | 90/014,833 | |
| Filing Date | | |
| First Named Inventor | Harold Edward Price | |
| Art Unit | 3992 | |
| Examiner Name | Luke S. Wassum | |
| Attorney Docket Number | | |

## U.S.PATENTS

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 8122141 | | 2012-02-21 | Price (Ex. 1) | |
| | 2 | 8327011 | | 2012-12-04 | Price (Ex. 2) | |
| | 3 | 6389473 | | 2002-05-14 | Carmel (Ex. 3) | |
| | 4 | 7529806 | | 2009-05-05 | Shetyn (Ex. 4) | |
| | 5 | 6175862 | | 2001-01-16 | Chen (Ex. 6) | |
| | 6 | 5987510 | | 1999-11-16 | Imai (Ex. 7) | |
| | 7 | 6792468 | | 2004-09-14 | Bloch (Ex. 8) | |
| | 8 | 5793980 | | 1998-08-11 | Glaser (Ex. 9) | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.S.W/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | |

| | 9 | 6005600 | | 1999-12-21 | Hill (Ex.10) | |
|---|---|---|---|---|---|---|
| | 10 | 6845398 | | 2005-01-18 | Galensky (Ex. 11) | |

If you wish to add additional U.S. Patent citation information please click the Add button.

## U.S.PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

## FOREIGN PATENT DOCUMENTS

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 97/44942 | WO | A2 | 1997-11-27 | Narrative Communications Corp (Ex. 5) | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

## NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | Final Written Decision on Remand, WebPower v. WAG Acquisition, IPR2016-01238, Paper No. 28 (Jul. 16, 2020) (Ex. 12) | ☐ |
| | 2 | US 8,122,141 Patent Prosecution History (Ex. 13) | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.S.W/

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | | |
| | Filing Date | | |
| | First Named Inventor | | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | | |

| | | | |
|---|---|---|---|
| | 3 | US 8,327,011 Patent Prosecution History (Ex. 14) | ☐ |
| | 4 | Plaintiff's Opening Claim Construction Brief, WAG Acquisition, L.L.C. v. Gattyan Group S.a r.l. et al., No. 2:14-cv-2832-ES-MAH, Dkt. No. 274 (D.N.J. Jan. 7, 2021) (Ex. 15) | ☐ |
| | 5 | Plaintiff's Responsive Claim Construction Brief, WAG Acquisition, L.L.C. v. Gattyan Group S.a r.l. et al., No. 2:14-cv-2832-ES-MAH, Dkt. No. 282 (D.N.J. Mar. 4, 2021) (Ex. 16) | ☐ |
| | 6 | Plaintiff's Opening Claim Construction Brief, WAG Acquisition, L.L.C. v. Flying Crocodile, Inc., et al., No. 2:19-cv-01278-BJR, Dkt. No. 263 (W.D. Wash. Mar. 24, 2021) (Ex. 17) | ☐ |
| | 7 | Plaintiff's Responsive Claim Construction Brief, WAG Acquisition, L.L.C. v. Flying Crocodile, Inc., et al., No. 2:19-cv-01278-BJR, Dkt. No. 269 (W.D. Wash. Apr. 14, 2021) (Ex. 18) | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | /LUKE S WASSUM/ | Date Considered | 09/27/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.S.W/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐    That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐    That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐    See attached certification statement.

☐    The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒    A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Frank Gasparo/ | Date (YYYY-MM-DD) | 2021-08-25 |
| Name/Print | Frank M. Gasparo | Registration Number | 44,700 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.S.W/

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.   The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.   A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.   A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.   A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.   A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.   A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.   A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.   A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.   A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.S.W/

EXHIBIT B

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/014,834 | 08/25/2021 | 8122144 | 125737.538655 | 8070 |

7590            09/21/2021

ERNEST D. BUFF
ERNEST D. BUFF & ASSOCIATES
231 SOMERVILLE ROAD
BEDMINSTER, NJ 07921

| EXAMINER |
|---|
| FERRIS III, FRED O |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/21/2021 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

VENABLE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-3800

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/014,834* .

PATENT UNDER REEXAMINATION *8122141* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting Request For Ex Parte Reexamination* | **Control No.** 90/014,834 | **Patent Under Reexamination** 8122141 | |
|---|---|---|---|
| | **Examiner** FRED O FERRIS III | **Art Unit** 3992 | **AIA (FITF) Status** No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 08/25/2021 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐   PTO-892,        b)☑   PTO/SB/08,   c)☐   Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| | | |
|---|---|---|
| | | |

cc:Requester ( if third party requester )

## DECISION GRANTING EX PARTE REEXAMINATION

### 1.0    DECISION ON REQUEST

A substantial new question of patentability affecting claims 1, 5, 8, 24 and 28 of U.S. Patent No.

8,122,141 (the '141 patent) to Price is raised by the request for *ex parte* reexamination. Claims

1, 5, 8, 24 and 28 are current claims in the '141 patent issued on Feb. 21, 2012 from application

12/800,152 filed on May 10, 2010.

### 2.0    REFERENCES

The examiner considers a substantial new question of patentability has been raised by at least the

following prior art references:

        1) U.S. Patent No. 6,389,473 to Carmel et al. (Carmel)
        2) U.S. Patent No. 7,529,806 to Shteyn (Shteyn)
        3) WO 1997044942 to Kliger et al. (Kliger)
        4) U.S. Patent No. 6,175,862 to Chen and Feig (Feig)
        5) U.S. Patent No. 5,987,510 to Imai et al. (Imai)
        6) U.S. Patent No. 6,792,468 to Bloch et al. (Bloch)
        7) U.S. Patent No. 5,793,980 to Glaser et al. (Glaser)
        8) U.S. Patent No. 6,005,600 to Hill (Hill)
        9) U.S. Patent No. 6,845,398 to Galensky et al. (Galensky)

### 3.0    BACKGROUND

The '141 Patent discloses a system and method for buffering streaming media data over the

Internet. ('141 at 1:30-33) The '141 Patent admits that sending audio and video files via a

network was known in the art (e.g at 4:1-2), as was using a client buffer to assure a continuous

stream of audio and video. (e.g. at 2:31-63) The '141 Patent further admits that it was known to

use a pre-buffering technique to minimize dropouts in audio and video, and that it was known to

transmit content at the rate it is to be played back on the associated media player. *Id* The '141

Patent also assumes the existence of a transport mechanism (TCP), and such delivery of data is outside the scope of the alleged '141 invention: (e.g. at 5:5-11) The '141 Patent further asserts that there was a need for improved systems and methods to "afford immediate and uninterrupted listening/viewing of streaming media by the user." (e.g. at 4:33-35) According to the '141 Patent, these objectives are addressed by transmitting data from the server "more rapidly than it is played out by the user system under conditions wherein the user's computer buffer is not full." (e.g. at 9:51-62) In this way, the '141 Patent claims that the client's buffer will have uninterrupted playback to the user.

## 4.0    IDS

With respect to the Information Disclosure Statements (PTO/SB/08A and 08B or its equivalent) filed on 8/25/2021 and considered with this action, the information cited has been considered as described in the MPEP. Note that MPEP 2256 indicate that degree of consideration to be given to such information will be normally limited by the degree to which the party filing the information citation has explained the content and relevance of the information.

## 5.0    PROSECUTION HISTORY

During the original prosecution which led to the allowance of the '141 patent (12/800,152 filed May 10, 2010) the examiner initially issued a Non Final Office action finding all twenty of the pending claims (1-27) were unpatentable under 35 USC 103 over Goetz in view of Chou (claims 1-9 and 24-27) and in further view of Parasnis and Sincaglia (claims 10-23). (OA 11/24/2010 at page 8) On 5/16/2011 applicants filed an amendment arguing the following relative to primary reference Goetz and representative claim 1:

Application/Control Number: 90/014,834                                                      Page 4
Art Unit: 3992

*Goetz fails to disclose "receiv[ing] requests from the user system for media data elements corresponding to specified identifiers" or "request[ing] transmission of the next sequential media data elements following said last sequential media data element."* The portion of Goetz cited for this teaching, col. 11, lines 27-32, simply teaches a request for a desired "media type" — not a request for specific data elements of which the media stream is comprised.[1] (emphasis added)

On 10/11/2011 the examiner passed the case to allowance and was apparently persuaded by applicants' arguments relating to *media data elements corresponding to specified identifiers* stating that the claim required the media player buffer manager in the user computer to maintain a record of the serial number (i.e. serial identifier) assigned by the server. (e.g. at page 5) Since these features were argued to distinguish over the prior art, any teaching of *receiv[ing] requests from the user system for media data elements corresponding to specified identifiers" or "request[ing] transmission of the next sequential media data elements following said last sequential media data element* would raise an SNQ since a reasonable examiner would consider such teachings as important in determining the patentability of the claims. These features now appear to be present in the newly cited prior art.

## 6.0    SUBSTANTIAL NEW QUESTION

In view of the prosecution history, it is considered that the evaluation of a prior art reference that teaches or suggests the above noted limitations would have been considered important in determining the patentability of the claims.

## 7.0    PROPOSED SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

---

[1] Applicants likewise made similar arguments relative to Parasnis, Sincaglia and Chou. (e.g. at pages 10-11)

Application/Control Number: 90/014,834                                                      Page 5
Art Unit: 3992

## 7.1    SNQ 1: Carmel either alone or in combination with various other references

## (Shteyn, Kliger, Feig, Hill, Bloch, Glaser/Galensky)

The request indicates (e.g. at 24-143) that Requester considers that claims 1, 5, 8, 24 and 28 of

the '141 patent are unpatentable over Carmel either alone or in combination with various other

references. It is agreed that the consideration of Carmel, either alone or in combination with

various other references, raises a substantial new question of patentability with respect to claims

1, 5, 8, 24 and 28 of the '141 patent.

Carmen, and the various other references are new art that was not considered during prosecution

leading to the allowance of the '141 patent.[2] The references all predate the filing of the '141

patent. Specifically, Carmel was filed on March 24, 1999 and issued on May 14, 2002. It is prior

art under at least (pre-AIA) 35 U.S.C. § 102 (e). Carmel is new prior art not cited on the front

page of the '141 Patent and hence was not before the examiner at the time of allowance.

Regarding representative claim 1, Carmel discloses a method for real-time media streaming from

a server to a plurality of client computers over the Internet. (e.g. at 2: 1-21) Most importantly,

Carmel discloses dividing the media data into sequential slices, each having a unique <u>index or

identifier</u>. (e.g. at 7: 18-35, Fig. 3A) Carmel further teaches that a server provides an index file

consisting of these slices, each with <u>an identifier</u>. (e.g. at 7:59-8:5) Carmel also teaches that the

index file at the server can consist of different quality level files. (e.g. at 3:5-9, 8:56-9:5, Fig. 3D)

The client reads the server's index file containing the numbered slices and thereafter requests and

downloads the numbered slices <u>from the server</u>. (e.g. at 7:59-8:5, 10:25-48, claim 10, Fig. 6A)

Carmel describes that it transmits the data faster than the playback rate. (e.g. at 2:51-59, 7:39-42,

11:12-14, 11:9-22) Accordingly, Carmel appears to teach the very elements relating to media

---

[2] Prior art Glaser was before the examiner but never used in the context of a rejection and is now being viewed in a
new light based on its combination with Carmel.

data elements corresponding to specified identifiers that were deemed to distinguish the '141 patent over the prior art at the time of allowance. The various other references likewise teach certain elements of representative claims 1.

Hence, Carmel either alone or in combination with various other references provides new non-cumulative technological teachings. Further, there is substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable. Accordingly, Carmel either alone or in combination with various other references, raises a substantial new question of patentability with respect to at least claim 1 of the '141 patent, which question has not been decided in a previous examination of the '141 patent.

## 7.2    SNQ 2: Shteyn either alone or in combination with various other references. (Carmel, Glaser, or TCP)

The request indicates (e.g. at 78-143) that Requester considers that claims 1, 5, 8, 24 and 28 of the '141 patent are unpatentable over Shteyn either alone or in combination with various other references. It is agreed that the consideration of Shteyn, either alone or in combination with various other references, raises a substantial new question of patentability with respect to claims 1, 5, 8, 24 and 28 of the '141 patent.

Shteyn, and the various other references are new art that was not considered during prosecution leading to the allowance of the '141 patent.[3] The references all predate the filing of the '141 patent. Specifically, Shteyn was filed on November 4, 1999 and issued on May 5, 2009. It is prior art to the '141 Patent under at least (pre-AIA) 35 U.S.C. § 102(e). Shteyn is not cited on the front page of the '141 Patent and hence was not before the examiner at the time of allowance.

---

[3] Prior art Glaser was before the examiner but never used in the context of a rejection and is now being viewed in a new light based on its combination with Carmel.

Regarding representative claim 1, Shteyn teaches a computer with media player software, including Java, for playing streaming media. (e.g. at Abstract, 4:32-44) Importantly, Shteyn further teaches that the client downloads a control file listing segments each with an <u>identifier</u>, e.g., URL or filename (e.g., part 1), available at the server. (e.g. at 2:60-63, 2:67-3:2) Shteyn teaches that such segments can have different bandwidth, thereby the client can select the appropriate segment depending on network bandwidth. (e.g. at 3:44-53, 3:55-56, 4:20-26, Fig. 2, claims 1, 12) Shteyn also describes that the media player buffers and plays the first segment (e.g., part 1) while downloading, buffering, and playing the second segment and other segments until the end of the video. (e.g. at Abstract, 3:3-18) Shteyn further teaches that the media player can implement this sequential buffering using a <u>linked list of segments</u> (data structure that records the name of the segment and data with a pointer to the next segment received), which tracks the segments downloaded including the last segment downloaded. (e.g. at 3: 14-18, 3:31-36) Accordingly, Shteyn appears to teach the very elements relating to media data elements corresponding to specified identifiers that were deemed to distinguish the '141 patent over the prior art at the time of allowance. The various other references likewise teach certain elements of representative claims 1.

Hence, Shteyn either alone or in combination with various other references provides new non-cumulative technological teachings. Further, there is substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable. Accordingly, Shteyn either alone or in combination with various other references, raises a substantial new question of patentability with respect to at least claim 1 of the '141 patent, which question has not been decided in a previous examination of the '141 patent.

### 7.3     SNQ 3: Kliger either alone or in combination with Carmel.

The request indicates (e.g. at 98-143) that Requester considers that claims 1, 5, 8, 24 and 28 of the '141 patent are unpatentable over Kliger either alone or in combination with Carmel. It is agreed that the consideration of Kliger, either alone or in combination with Carmel, raises a substantial new question of patentability with respect to claims 1, 5, 8, 24 and 28 of the '141 patent.

Kliger and Carmel are new art that was not considered during prosecution leading to the allowance of the '141 patent. The references all predate the filing of the '141 patent. Specifically, Kliger has an international filing date of May 22, 1997 and published on November 27, 1997. It is prior art to the '141 Patent under at least (pre-AIA) 35 U.S.C. §§ 102(a) and (b). Kliger is not cited on the front page of the '141 Patent and hence was not before the examiner at the time of allowance.

Regarding representative claim 1, Kliger teaches that a media player with software requests from the server an object map with a listing of objects (e.g., video) by <u>identifier</u>. Kliger (e.g. at 7:10-12, 8:3-15, 8: 16-8:25, 9:20-9:29) Importantly, Kliger further teaches that the client application uses the object map to request the objects in the map by <u>identifier from the server</u>. (e.g. at Abstract, 3:8-11, 8:3-15, Fig. 3) Kliger also describes that the objects can have different bandwidth, thereby the client can select the <u>appropriate segment</u> depending on network bandwidth. (e.g. at 3:25-32, 5:25-28, 9:32-10:4, 12:33:13:8, claim 3) Kliger's client application buffers each object associated with a <u>serial number received from the server</u> (e.g. at 11:34-12:5) and maintains sufficient data in the buffers by ensuring the transmission rate is greater than the consumption (or playback) rate. (e.g. at 13:33-14:2, 15:10-13, 18:21-19:2) Accordingly, Kliger appears to teach the very elements relating to media data elements corresponding to specified

identifiers that were deemed to distinguish the '141 patent over the prior art at the time of

allowance. Carmel likewise teaches relevant elements as noted above.

Hence, Kliger either alone or in combination with Carmel provides new non-cumulative

technological teachings. Further, there is substantial likelihood that a reasonable examiner would

consider this teaching important in deciding whether or not the claims are patentable.

Accordingly, Kliger either alone or in combination with Carmel, raises a substantial new

question of patentability with respect to at least claim 1 of the '141 patent, which question has

not been decided in a previous examination of the '141 patent.


### 7.4    SNQ 4: Feig either alone or in combination with (Carmel, Glaser, ...)

The request indicates (e.g. at 113-143) that Requester considers that claims 1, 5, 8, 24 and 28 of

the '141 patent are unpatentable over Feig either alone or in combination with various other

references. It is agreed that the consideration of Feig, either alone or in combination with various

other references, raises a substantial new question of patentability with respect to claims 1, 5, 8,

24 and 28 of the '141 patent.

Feig, and the various other references are new art that was not considered during prosecution

leading to the allowance of the '141 patent. The references all predate the filing of the '141

patent. Specifically, Feig was filed on June 17, 1998 and issued on January 16, 2001. It is prior

art to the' 141 Patent under at least (pre-AIA) 35 U.S.C. § 102(e). Feig is not cited on the front

page of the' 141 Patent and hence was not before the examiner at the time of allowance.

Regarding representative claim 1, Feig teaches a media player that downloads from a server a

file with a sequence of URLs where each URL is unique and can represent a video segment. (e.g.

at 2:60-67, 1:56-57, 2:54-59) The media player transmits requests for each media segment by

URL or identifier. (e.g. at Abstract, 5:16-23) Feig further teaches that the media player buffers each unique media segment from the URL while requesting the next one. (e.g. at 5: 16-23, claim 11) This downloading from the server and storing of unique media segments from the URLs in the two buffers continues until the end of the media. (e.g. at 5:37-43) Feig provides an example of transmitting such segments at a high rate and buffering as well as playing such segments. (e.g. at 6:21-38) Accordingly, Feig appears to teach the very elements relating to media data elements corresponding to specified identifiers that were deemed to distinguish the '141 patent over the prior art at the time of allowance. The various other reference likewise teach claim elements as noted above.

Hence, Feig either alone or in combination with various other references provides new non-cumulative technological teachings. Further, there is substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not the claims are patentable. Accordingly, Feig either alone or in combination with various other references, raises a substantial new question of patentability with respect to at least claim 1 of the '141 patent, which question has not been decided in a previous examination of the '141 patent.

## 8.0    CONCLUSION

Claims 1, 5, 8, 24 and 28 of the '141 patent will be examined.

## Extensions of Time

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that ex parte reexamination proceedings "will

be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in ex parte

reexamination proceedings are provided for in 37 CFR 1.550(c).

### Waiver of Right to File Patent Owner Statement

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530 to file a

Patent Owner Statement. The document needs to contain a statement that Patent Owner waives

the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in the

manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third party

requester, see 37 C.F.R 1.550(f). The Patent Owner may consider using the following statement

in a document waiving the right to file a Patent Owner Statement:

Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.

### Amendment in Reexamination Proceedings

Patent owner is notified that any proposed amendment to the specification and/or claims in this

reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented

pursuant to 37 CFR § 1.52(a) and (b), and must contain any fees required by 37 CFR § 1.20(c).

See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments

in reexamination proceedings.

### Submissions

If the patent owner fails to file a timely and appropriate response to any Office action or any

written statement of an interview required under 37 CFR § 1.560(b), the ex parte reexamination

proceeding will be terminated, and the Director will proceed to issue a certificate under 37 CFR

§1.570 in accordance with the last Office action.

### Service of Papers

Application/Control Number: 90/014,834                                    Page 12
Art Unit: 3992

After the filing of a request for reexamination by a third party requester, any document filed by

either the patent owner or the third party requester must be served on the other party (or parties

where two or more third party requester proceedings are merged) in the

reexamination proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

**Notification of Concurrent Proceedings**

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise

the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S.

Patent No 8,122,141 throughout the course of this reexamination proceeding. The third

**All** correspondence relating to this ex parte reexamination proceeding should be directed:

By Mail to:      Mail Stop *Ex Parte* Reexam

            Central Reexamination Unit
            Commissioner for Patents
            United States Patent & Trademark Office
            P.O. Box 1450
            Alexandria, VA 22313-1450

By FAX to:     (571) 273-9900
            Central Reexamination Unit

By hand:       Customer Service Window
            Randolph Building
            401 Dulany Street
            Alexandria, VA 22314

Any inquiry concerning this communication should be directed to the Central Reexamination

Unit at telephone number (571) 272-7705.

/FRED O FERRIS III/
Reexamination Specialist, Art Unit 3992

/Woo H Choi/
Patent Reexamination Specialist, Art Unit 3992
/M.F/
Supervisory Patent Examiner, Art Unit 3992

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/014,834 | 8122144 |
| | Examiner | Art Unit |
| | FRED O FERRIS III | 3992 |

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| H04N21/23805 | 09/17/2021 | FOF |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 709 | 231 | 09/17/2021 | FOF |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Reviewed prior art of record | 09/17/2021 | FOF |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| ***Reexamination*** | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/014,834 | 8122144 |
| | **Certificate Date** | **Certificate Number** |
| | | |

| **Requester Correspondence Address:** ☐ | **Patent Owner** ☑ | **Third Party** |
|---|---|---|

VENABLE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-3800

| **LITIGATION REVIEW** ☑ | FOF<br>(examiner initials) | 17 September 2021<br>(date) |
|---|---|---|
| | Case Name | Director Initials |
| Lit search dated 9/1/2021 | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| | |

| | |
|---|---|
| | |

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | |
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | |

## U.S.PATENTS

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 8122141 | | 2012-02-21 | Price (Ex. 1) | |
| | 2 | 8327011 | | 2012-12-04 | Price (Ex. 2) | |
| | 3 | 6389473 | | 2002-05-14 | Carmel (Ex. 3) | |
| | 4 | 7529806 | | 2009-05-05 | Shteyn (Ex. 4) | |
| | 5 | 6175862 | | 2001-01-16 | Chen (Ex. 6) | |
| | 6 | 5987510 | | 1999-11-16 | Imai (Ex. 7) | |
| | 7 | 6792468 | | 2004-09-14 | Bloch (Ex. 8) | |
| | 8 | 5793980 | | 1998-08-11 | Glaser (Ex. 9) | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /F.O.F/

<table>
<tr><td rowspan="2">INFORMATION DISCLOSURE STATEMENT BY APPLICANT<br>( Not for submission under 37 CFR 1.99)</td><td>Application Number</td><td></td></tr>
</table>

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
| --- | --- | --- |
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | |

| | 9 | 6005600 | 1999-12-21 | Hill (Ex. 10) | |
| --- | --- | --- | --- | --- | --- |
| | 10 | 6845398 | 2005-01-18 | Galensky (Ex. 11) | |

If you wish to add additional U.S. Patent citation information please click the Add button.

## U.S.PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| --- | --- | --- | --- | --- | --- | --- |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

## FOREIGN PATENT DOCUMENTS

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 | 97/44942 | WO | A2 | 1997-11-27 | Narrative Communications Corp (Ex. 5) | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

## NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
| --- | --- | --- | --- |
| | 1 | Final Written Decision on Remand, WebPower v. WAG Acquisition, IPR2016-01238, Paper No. 28 (Jul. 16, 2020) (Ex. 12) | ☐ |
| | 2 | US 8,122,141 Patent Prosecution History (Ex. 13) | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /F.O.F/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | |

| | 3 | US 8,327,011 Patent Prosecution History (Ex. 14) | ☐ |
| | 4 | Plaintiff's Opening Claim Construction Brief, WAG Acquisition, L.L.C. v. Gattyan Group S.a r.l. et al., No. 2:14-cv-2832-ES-MAH, Dkt. No. 274  (D.N.J. Jan. 7, 2021) (Ex. 15) | ☐ |
| | 5 | Plaintiff's Responsive Claim Construction Brief, WAG Acquisition, L.L.C. v. Gattyan Group S.a r.l. et al., No. 2:14-cv-2832-ES-MAH, Dkt. No. 282  (D.N.J. Mar. 4, 2021) (Ex. 16) | ☐ |
| | 6 | Plaintiff's Opening Claim Construction Brief, WAG Acquisition, L.L.C. v. Flying Crocodile, Inc., et al., No. 2:19-cv-01278-BJR, Dkt. No. 263  (W.D. Wash. Mar. 24, 2021) (Ex. 17) | ☐ |
| | 7 | Plaintiff's Responsive Claim Construction Brief, WAG Acquisition, L.L.C. v. Flying Crocodile, Inc., et al., No. 2:19-cv-01278-BJR, Dkt. No. 269  (W.D. Wash. Apr. 14, 2021) (Ex. 18) | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | /FRED O FERRIS III/ | Date Considered | 09/17/2021 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /F.O.F/

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Frank Gasparo/ | Date (YYYY-MM-DD) | 2021-08-25 |
|---|---|---|---|
| Name/Print | Frank M. Gasparo | Registration Number | 44,700 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /F.O.F/

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /F.O.F/

EXHIBIT C

DECISION

U~NITED~ S~TATES~ P~ATENT AND~ T~RADEMARK~ O~FFICE~

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/014,835 | 08/25/2021 | 8185611 | 125737.538655 | 9923 |

7590          11/12/2021

ERNEST D. BUFF
ERNEST D. BUFF & ASSOCIATES
231 SOMERVILLE ROAD
BEDMINSTER, NJ 07921

| EXAMINER |
|---|
| LEE, CHRISTOPHER E |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/12/2021 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Frank M. Gasparo (General)
VENABLE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-3800

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/014,835* .

PATENT UNDER REEXAMINATION *8185611* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

/CEL/

PTOL-465 (Rev.07-04)

| *Order Denying Request For Ex Parte Reexamination* | **Control No.** 90/014,835 | | **Patent Under Reexamination** 8185611 | |
|---|---|---|---|---|
| | **Examiner** Christopher E Lee | | **Art Unit** 3992 | **AIA (FITF) Status** No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 08/25/2021 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐   PTO-892,   b)☑   PTO/SB/08,   c)☐   Other: _____

The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐ by Treasury check or,

b) ☑ by credit to Deposit Account No. 22-0261 , or

c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C.303(c)).

| /Christopher E. Lee/ Primary Examiner, Art Unit 3992 | | |
|---|---|---|

cc: Requester ( if third party requester )

## DECISION DENYING *EX PARTE* REEXAMINATION

### *Ex Parte Reexamination*

1.      This is an *ex parte* reexamination of United States Patent Number US 8,185,611 B2, which issued to Price [hereinafter "the '611 Patent"] requested by Third Party requester, and it is being reexamined under the pre-AIA first to invent provisions.  The '611 Patent has been expired[1].  However, it is enforceable under 37 CFR § 1.510(a) at the time of filing the instant *ex parte* reexamination proceeding.

### *Patent Assignment*

2.      The '611 Patent is currently assigned to: WAG ACKQUISITION, LLC of FLANDERS, NEW JERSEY.  It was issued from the U.S. Patent Application No. 12/800,177 (hereinafter "the '177 Application") filed on May 10, 2010, which is a continuation application of a non-provisional application 10/893,814 filed on 7/19/2004 (patented US 7,716,358 B2), which is a continuation-in-part application of a non-provisional application 09/819,337 filed on 3/28/2001 (patented US 6,766,376 B2), which has a provisional application 60/231,997 filed on 9/12/2000.

### *Information Disclosure Statement*

3.      The information disclosure statement filed on August 25, 2021 by the Third Party requester has been considered.  Where patents, publications, and other such items of information are submitted by the reissue applicant in compliance with the requirements of the rules 37 CFR § 1.97 and 37 CFR § 1.98, the requisite degree of consideration to be given to such information will be normally limited by the degree to which the party filing the information citation has explained the content and relevance of the information.  The initials of the Examiner placed adjacent to the citations on the form PTO/SB/08A and 08B or its equivalent, without an indication to the contrary in the record, do not signify that the information has been considered by the Examiner any further than to the extent noted above. See MPEP § 2256.

### *Prosecution History of the '611 Patent*

4.      The '611 Patent was issued from the '177 Application, and it is generally directed to multimedia computer communication system and method for delivering streaming media on the Internet.

        Here is the prosecution history of the '611 Patent listed in chronological.

---

[1] The expiration date for the '611 Patent is March 28, 2021 since the '611 Patent claims a domestic benefit of the earliest effective filing date March 28, 2001 without any patent term extended or adjusted.

Control Number: 90/014,835
Page 3
Art Unit: 3992
*Ex Parte* Reexamination Order Decision

| | |
|---|---|
| 09/12/2000 | The provisional application 60/231,997 was filed. |
| 03/28/2001 | The non-provisional application 09/819,337 was filed and claimed the benefit of the provisional application 60/231,997. |
| 02/04/2004 | The Examiner of record issued a notice of allowance for the application 09/819,337, which was ultimately patented US 6,766,376 B2. |
| 07/19/2004 | The non-provisional application 10/893,814 was filed as a continuation-in-part application of the application 09/819,337. |
| 12/29/2009 | The Examiner of record issued a notice of allowance for the application 10/893,814, which was ultimately patented US 7,716,358 B2. |
| 05/10/2010 | The non-provisional application 12/800,177 was filed as a continuation application of the application 10/893,814. |
| 11/22/2010 | The Examiner of record issued a non-final First action on the merit for the application 12/800,177. |
| 05/16/2011 | The applicant responded to the non-final First action of the application 12/800,177. |
| 08/01/2011 | The Examiner of record issued a notice of allowance for the application 12/800,177. |
| 05/22/2012 | The '177 Application was ultimately patented and issued as '611 Patent on May 22, 2012. |
| 04/14/2015 | A petition of *inter partes* review IPR2015-01035 was filed in the '611 Patent. |
| 10/23/2015 | The PTAB (Patent Trial and Appeal Board; hereinafter "the Board") determined denying institution of *inter partes* review IPR2015-01035 to the petitioner. |
| 06/06/2016 | A petition of *inter partes* review IPR2016-01162 was filed in the '611 Patent. |
| 08/23/2016 | A petition of *inter partes* review IPR2016-01657 was filed in the '611 Patent. |
| 12/12/2016 | The PTAB determined denying institution of *inter partes* review IPR2016-01162 to the petitioner. |
| 02/27/2017 | The PTAB determined denying institution of *inter partes* review IPR2016-01657 to the petitioner. |
| 08/25/2021 | The Third Party requester filed the instant *ex parte* reexamination of the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent. |

### *References presenting Substantial New Question of Patentability*

5.      The Third Party requester alleges that the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent are unpatentable over the following references in combination:

- Chen et al. [US 5,822,524 A], "System for Just-In-Time Retrieval of Multimedia Files over Computer Networks by Transmitting Data Packets at Transmission Rate Determined by Frame Size," issued on October 13, 1998 (hereinafter "Chen")

- The file history of Chen [US 5,822,524 A], publishing dated on October 13, 1998

Control Number: 90/014,835                                                          Page 4
Art Unit: 3992                                                  *Ex Parte* Reexamination Order Decision

(hereinafter "ChenFH")

- Nguyen et al. [US 7,373,413 B1], "Devices and Methods for minimizing Start Up Delay in Transmission of Streaming Media," issued on May 13, 2008 (hereinafter "Nguyen-413")

- Nguyen et al. [US 7,111,058 B1], "Server and Method for Transmitting Streaming Media to Client through a Congested Network," issued on May 13, 2008 (hereinafter "Nguyen-058")

- Vahalia et al. [US 5,933,603 A], "Video File Server maintaining Sliding Windows of a Video Data Set in Random Access Memories of Stream Server Computers for immediate Video-On-Demand Service beginning at Any Specified Location," issued on August 3, 1999 (hereinafter "Vahalia")

- Aharoni et al. [US 6,014,694 A], "System for Adaptive Video/Audio Transport over a Network," issued on January 11, 2000 (hereinafter "Aharoni")

- Pejhan et al. [US 6,850,564 B1], "Apparatus and Method for Dynamically Controlling the Frame Rate of Video Streams," issued on February 1, 2005 (hereinafter "Pejhan")

- Bhat [US 5,764,961 A], "Predictable Diverse Data Delivery Enablement Method and Apparatus for ATM based Computer System," issued on June 9, 1998 (hereinafter "Bhat")

Of the above references cited in the substantial new questions of patentability, the references "Chen," "ChenFH," "Pejhan," and "Bhat" are not cited on the face of the '611 Patent and its related patents, and are not of record in the file of the '611 Patent, but the other references "Nguyen-413," "Nguyen-058," "Aharoni," and "Vahalia" are cited on the face of the '611 Patent or its related patents; thus, the references "Chen," "ChenFH," "Pejhan," and "Bhat" are not cumulative to the art of record in the original.  Meanwhile, a review of prosecutions of the '177 Application and its related applications reveals that Nguyen-413, Nguyen-058, Aharoni, and Vahalia were cited on IDS filed during the prosecutions of the '177 Application and its related applications and were considered during said prosecutions by the Examiner of record, but were not referred to anticipate and/or render obvious the claims during the '177 Application.

On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. § 303(a) and § 312(a):

The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based

exclusively on that old art. Rather, determinations on whether an SNQ of patentability exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, the Third Party requester alleges that there exists an SNQ of patentability based on the printed publications "Chen," "ChenFH," "Pejhan," "Bhat," "Nguyen-413," "Nguyen-058," "Aharoni," and/or "Vahalia".

A discussion of the specifics now follows.

### Substantial New Questions of Patentability raised by the Third Party requester

6.      In the request for the instant *ex parte* reexamination, it sets forth that the Third Party requester considers that:

- Substantial new question of patentability as to claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by Chen taken with ChenFH.

- Substantial new question of patentability as to claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by Nguyen-413 alone or Nguyen-413 taken with Chen/ChenFH or TCP[2].

- Substantial new question of patentability as to claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by Chen taken with ChenFH and Nguyen-058.

- Substantial new question of patentability as to claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by Chen taken with ChenFH and Vahalia.

- Substantial new question of patentability as to claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by Aharoni alone.

- Substantial new question of patentability as to claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by Chen taken with ChenFH and Nguyen-413.

- Substantial new question of patentability as to claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by Nguyen-413 taken with Nguyen-058.

- Substantial new question of patentability as to claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by Chen taken with ChenFH and Pejhan.

- Substantial new question of patentability as to claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by Chen taken with ChenFH and Bhat.

### Analysis of Substantial New Questions of Patentability

7.      As discussed in the above, the patent under the instant *ex parte* reexamination, i.e., the '611 Patent, was expired on March 28, 2021. In making the determination of whether to order an *ex parte* reexamination, the claim terms in this expired '611 Patent are not given the

---

[2] TCP: Transmission Control Protocol; this is not a proper reference presenting SNQ of patentability affecting claims 1, 3, 8, 9, 14, and 15 of the '611 Patent because it has never been cited as a printed publication to the Office for placement into the patent files pursuant to 37 CFR 1.501(a) and (b). See the Request at pages 13-20.

broadest reasonable interpretation (BRI) standard (see *In re Yamamoto,* 740 F.2d 1569 (Fed.

Cir. 1984)), but their ordinary and customary meaning as understood by a person of ordinary

skill in the art in question at the time of the invention pursuant to the principle set forth by the

court in *Phillips v. AWH Corp.,* 415 F.3d 1303, 1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005)

5    (words of a claim "are generally given their ordinary and customary meaning" as understood by

a person of ordinary skill in the art in question at the time of the invention, see *Ex parte Papst-

Motoren,* 1 USPQ2d 1655 (Bd. Pat. App. & Inter. 1986)).

Nonetheless, the Office does not interpret claims when examining patent applications in

the same manner as the courts. *In re Morris,* 127 F.3d 1048, 1054, 44 USPQ2d 1023, 1028

10   (Fed. Cir. 1997); *In re Zletz,* 893 F.2d 319, 321-22, 13 USPQ2d 1320, 1321-22 (Fed. Cir. 1989).

Therefore, the quoted claim constructions from the court trials[3] in the Request are not used for

purpose of this decision.

8.      In the original application of the '611 Patent (i.e., the '177 Application), the Examiner of

record rejected the originally filed claims over Goetz et al. [US 5,928,330 A] in view of Chou [US

15   6,637,031 B1], or further in view of Parasnis et al. [US 6,728,753 B1] and Sincaglia et al. [US

2001/0047377 A1].  The applicant responded to the Office action with the claim amendment

such as the originally filed claims were amended, and the amendment included a newly added

element "sending initial streaming media elements to the user system at an initial sending rate

more rapid than the playback rate, to fill the user buffer; and the media data elements is sent at

20   a rate that matches the constant fill rate of a server buffer, and is received at the same rate by

the user computer if there are no interruptions in the transmission of media data between the

server and the user's computer".  The Examiner of record allowed the '177 Application, which

was ultimately became the '611 Patent.

9.      In the prior petitions of *inter partes* reviews[4] regarding the '611 Patent, the Board found

25   that the prior arts of record, Chen and ChenFH[5], Carmel et al. [US 6,389,473 B1], ISO-11172[6],

Zheng[7], Lin et al. [US 6,405,256 B1], and/or Willebeek[8] do not teach or suggest the claimed

limitation "wherein the media data elements is sent at a rate that matches the constant fill rate of

---

[3] (i) WAG Acquisition, LLC. v. Gattyan Group, s.a.r.l. et al. (14-cv-02832(ES)(MAH) and (ii) WAG
Acquisition, LLC. v. Flying Crocodile, Inc. et al. (2:19-cv-01278-BJR)
[4] IPR2015-01035, IPR2016-01162, and IPR2016-01657
[5] Chen et al. [US 5,822,524 A] and its filing history
[6] International Standard Reference number ISO/IEC 11172-1:1993(E)
[7] Bing Zheng & Mohammed Atiquzzaman, Multimedia Over High Speed Networks:Reducing Network
Requirements with Fast Buffer, Fillup, 779-784 IEEE GLOBECOM 1988
[8] M.H. Willebeek-LeMair et al. Bamba-Audio and Video Streaming Over the Internet, IBM J.Res.Revelop.,
Vol. 42, No. 2 (1998)

a server buffer, and is received at the same rate by the user computer if there are no interruptions," or equivalents.  Thus, the Board determined that the prior petitions *inter partes* reviews regarding the '611 Patent did not establish a reasonable likelihood that the claims of the '611 Patent are unpatentable as obvious under the combination of the prior arts of record, and

5   ordered that no *inter partes* reviews regarding the '611 Patent were instituted.

10.     For purpose of this decision, the Examiner interprets the claiming language recited in the claims of the '611 Patent, for which *ex parte* reexamination is requested, using their ordinary and customary meaning as understood by a person of ordinary skill in the art because the '611 Patent has been expired.

10  i.   "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer" - once a connection is made to a user system for initial streaming media elements, a server sends said media elements to the user system at a rate faster than a playback rate until a user buffer has been filled (See the '611 Patent, col. col. 7, lines 53-65 and col. 15, line 63 through col. 16, line 4).

15  ii.  "the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer" - a sending rate out of the server corresponds to the constant rate at which said media data elements are transferred into the server buffer at any given time during uninterrupted

20  transmission of said media data elements (See the '611 Patent, col. col. 7, line 65 through col. 8, line 4).

11.     No substantial new question (SNQ) of patentability affecting claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is raised by the request for *ex parte* reexamination and prior art cited therein for the reasons set forth below.

25  *Re. alleged SNQ of patentability raised by Chen taken with ChenFH*

12.     The Request indicates that the Third Party requester considers that a substantial new question of patentability is raised to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent based on Chen taken with ChenFH.

The claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, for which the instant *ex parte*

30  reexamination is requested, essentially require the claimed element "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer; and the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no

interruptions in the transmission of media data between the server and the user's computer," which is important to be considered whether the substantial new question of patentability is raised by Chen taken with ChenFH; however, the Chen patent taken with the filing history of Chen patent does not raise a substantial new question of patentability as to the claims 1, 3, 8, 9,

5   14, and 15 of the '611 Patent because of the following reason.

Chen discloses a system and method for just-in-time retrieval of multimedia files over computer network (See Chen, Fig. 1 and col. 4, line 65 through col. 5, line 44), wherein it initially operates in "rush mode" when once a connection is made to a client machine because there is not enough data in the client agent buffer (See Chen, Fig. 6, claims 18, 29, and col. 6, lines 42-

10  47). This disclosure is teaching and/or suggesting the limitation "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer".

However, Chen and ChenFH do not teach/suggest the other limitation "the media data elements is sent at a rate that matches the constant fill rate of a server buffer" because they do

15  not disclose data flows out of the server 21 at a rate that matches the constant rate of filling data into the stream buffer 11 in Fig. 1 of Chen. Furthermore, Chen and ChenFH are silent upon whether the client machine (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network.

20  Although the Third Party requester merely alleges that the term "same rate" means the playback rate such as the frame rates and the term "constant fill rate" would simply be the frame rate, the Third Party requester does not provide any persuasive reason why the terms "same rate" and "constant fill rate" mean the frame rate in light of the specification of '611 Patent.

In addition, the Third Party requester fails to show at where the references Chen and/or

25  ChenFH describe the claimed element "the user computer (i.e., client machine) receives the multimedia data at the rate that matches the constant rate of filling said multimedia data into the server buffer (i.e., the same rate) during uninterrupted transmission of said media data (i.e., when there are no interruptions in the network)". In other words, the Third Party requester fails to show that Chen and Chen FH teach or suggest that the server buffer in Chen fills at a

30  constant rate that matches the rate of data coming out of the server buffer. Indeed, the argument of the Third Party requester does not address whether the server buffer filling rate is constant. This point was already discussed in the prior *inter partes* review proceedings regarding the '611 Patent as non-persuasive argument (See IPR2015-01035, Board decision denying institution of *Inter Partes* Review at page 15, lines 1-8, IPR2016-01162, Board decision

denying institution of *Inter Partes* Review at page 14, line 19 through page 20, line 5, and IPR2016-01657, Board decision denying institution of *Inter Partes* Review at page 16, line 23 through page 17, line 15).

The references Chen and ChenFH set forth in the Request have been considered all alone and in combination, but the Request fails to raise a substantial new question of patentability by the references Chen and ChenFH as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.

*Re. alleged SNQ of patentability raised by Nguyen-413 alone or Nguyen-413 taken with Chen/ChenFH or TCP*

13.      The Request indicates that the Third Party requester considers that a substantial new question of patentability is raised to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent based on Nguyen-413 alone or Nguyen-413 taken with Chen/ChenFH or TCP[9].

The claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, for which the instant *ex parte* reexamination is requested, essentially require the claimed element "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer; and the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer," which is important to be considered whether the substantial new question of patentability is raised by Nguyen-413 alone or Nguyen-413 taken with Chen/ChenFH or TCP; however, this is inappropriate because it is lump together the SNQ of patentability allegedly raised by Nguyen-413 alone or the SNQ of patentability allegedly raised by combining Nguyen-413 with Chen/ChenFH or TCP, which is not complied with 37 CFR § 1.150(b)(2), and also the Nguyen-413 patent alone or further with the Chen/ChenFH combination or TCP do not raise a substantial new question of patentability as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent because of the following reason.

Nguyen-413 discloses devices and methods for minimizing start up delay in transmission of streaming media (See Nguyen-413, Abstract), wherein, at startup, the portion of the media stream stored in an initial burst transmit buffer of the server is transmitted at a rate higher (i.e., burst rate) than the fixed frame rate (See Nguyen-413, col. 2, lines 22-27 and col. 3, lines 27-

---

[9] TCP: Transmission Control Protocol; this is not a proper reference presenting SNQ of patentability affecting claims 1, 3, 8, 9, 14, and 15 of the '611 Patent because it has never been cited as a printed publication to the Office for placement into the patent files pursuant to 37 CFR 1.501(a) and (b).

36).  This disclosure is teaching and/or suggesting the limitation "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer".

However,  Nguyen-413 does not teach/suggest the other limitation "the media data
5    elements is sent at a rate that matches the constant fill rate of a server buffer" because it does not disclose data flows out of the server/proxy 310 at a rate that matches a constant rate of filling data into the transmit buffer 314 from source in Fig. 3 of Nguyen-413.  Furthermore, Nguyen-413 is silent upon whether the client/receiver (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when
10   there are no interruptions in the network.

Although the Third Party requester alleges that the subject matter "same rate" is taught by Nguyen-413 such as the buffer is emptied at the same rate as it is filled while playing out at col. 1, lines 46-49, and the subject matter "constant fill rate" is taught by Nguyen-413 such as a fundamental requirement for streaming media is that it has to be played at a constant rate at col.
15   1, lines 20-21, those purported allegation is not persuasive because the quoted "same rate" from Nguyen-413 *foregoing* means that the empting rate and filling rate of variable size "de-jitter" receive buffer 364 within client/receiver 360 (e.g., user computer) in Fig. 3 is the same rate, which is different from the claimed "same rate" that requires the receiving rate of the user computer and the filling rate of server buffer within server should be the same rate; and the
20   quoted "constant fill rate" from Nguyen-413 *foregoing* means that the streaming rate for playing in client/receiver (e.g., user computer) should be a constant rate, but the claimed "constant fill rate" requires that the filling rate of server buffer within server should be a constant rate.

In addition, the Third Party requester fails to show at where the reference Nguyen-413 describes the claimed element "the user computer (i.e., client/receiver) receives the multimedia
25   data at the rate that matches the constant rate of filling said multimedia data into the transmit buffer (i.e., the same rate) during uninterrupted transmission of said media data (i.e., when there are no interruptions in the network)".  In other words, the Third Party requester fails to show that Nguyen-413 teaches or suggests that the transmit buffer in Nguyen-413 fills at a constant rate from source that matches the rate of data coming out of the transmit buffer.

30   Indeed, the argument of the Third Party requester does not address whether the transmit buffer filling rate is constant.  Even though the Third Party requester quoted the claims 1 and 7 of Nguyen-413, i.e., "a regular path for transmitting data received from a source at a regular rate; a first buffer in the regular path for buffering data from the source prior to transmission to the client" recited in claim 1 and "the regular path for transmitting data received from the source

over the network at the regular rate" recited in claim 7, the regular rate of the regular path for transmitting data received from a source is not a constant rate of filling the transmit buffer (i.e., server buffer), but a regular rate of transmitting data on the regular path over the network.

As discussed in the above, Chen and ChenFH do not teach/suggest the limitation "the media data elements is sent at a rate that matches the constant fill rate of a server buffer" because they do not disclose data flows out of the server 21 at a rate that matches the constant rate of filling data into the stream buffer 11 in Fig. 1 of Chen. Furthermore, Chen and ChenFH are silent upon whether the client machine (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network.

In the Request, it refers to "TCP" in the presentation of SNQ of patentability affecting claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, but it cannot be a proper reference presenting the SNQ of patentability because it has never been cited as a printed publication to the Office for placement into the patent files pursuant to 37 CFR 1.501(a) and (b).

Accordingly, the references Nguyen-413, Chen, and ChenFH set forth in the Request have been considered all alone and in combination, but the Request fails to raise a substantial new question of patentability by the references Nguyen-413, Chen, and ChenFH as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.

### *Re. alleged SNQ of patentability raised by Chen taken with ChenFH and Nguyen-058*

14.     The Request sets forth that the Third Party requester considers that a substantial new question of patentability is raised to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent based on Chen taken with ChenFH and Nguyen-058.

The claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, for which the instant *ex parte* reexamination is requested, essentially require the claimed element "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer; and the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer," which is important to be considered whether the substantial new question of patentability is raised by Chen taken with ChenFH and Nguyen-058; however, the Chen patent taken with the filing history of Chen patent and the Nguyen-058 patent does not raise a substantial new question of patentability as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent because of the following reason.

As discussed in the above, Chen discloses a system and method for just-in-time retrieval of multimedia files over computer network (See Chen, Fig. 1 and col. 4, line 65 through col. 5, line 44), wherein it initially operates in "rush mode" when once a connection is made to a client machine because there is not enough data in the client agent buffer (See Chen, Fig. 6, claims 18, 29, and col. 6, lines 42-47). This disclosure is teaching and/or suggesting the limitation "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer".

However, Chen and ChenFH do not teach/suggest the other limitation "the media data elements is sent at a rate that matches the constant fill rate of a server buffer" because they do not disclose data flows out of the server 21 at a rate that matches the constant rate of filling data into the stream buffer 11 in Fig. 1 of Chen. Furthermore, Chen and ChenFH are silent upon whether the client machine (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network.

The Third Party requester argues that Nguyen-058 discloses the same rate limitation, i.e., "the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer" (See the Request at pages 91-94).

Contrary to the Third Party requester's argument, Nguyen-058 does not teach/suggest the same rate limitation *foregoing* because it does not disclose data flows out of the server/proxy 310 at a rate that matches a constant rate of filling data into the transmit buffer 314 from source in Fig. 3 of Nguyen-058. Furthermore, Nguyen-058 is silent upon whether the client/receiver (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network.

Although the Third Party requester alleges that the subject matter "same rate" is taught by Nguyen-508 such as the [client] buffer first fills up to its size with data, and then starts playing out at the same rate as it is being filled at col. 1, lines 45-47, and the subject matter "constant fill rate" is purportedly taught by Nguyen-508 such as the server [transmit] buffer necessarily loads data at the frame rate or playback rate to transmit and receive at the same playback rate (See Nguyen-508, Fig 3 and the Request at page 92), those purported allegation is not persuasive because the quoted "same rate" from Nguyen-508 *foregoing* means that the streaming rate and filling rate of "de-jitter" receive buffer 364 within client/receiver 360 (e.g., user computer) in Fig. 3 is the same rate, which is different from the claimed "same rate" that requires the receiving

rate of the user computer and the filling rate of server buffer within server should be the same rate; and the Examiner cannot find the alleged "constant fill rate" in Nguyen-58 such that the server [transmit] buffer necessarily loads data at the frame rate or playback rate to transmit and receive at the same playback rate; thus, Nguyen-58 does not teach and/or suggest the claimed subject matter "constant fill rate".

Actually, the Third Party requester fails to show at where the reference Nguyen-508 describes the claimed element "the user computer (i.e., client/receiver) receives the multimedia data at the rate that matches the constant rate of filling said multimedia data into the transmit buffer (i.e., the same rate) during uninterrupted transmission of said media data (i.e., when there are no interruptions in the network)".  In other words, the Third Party requester fails to show that Nguyen-508 teaches or suggests that the transmit buffer in Nguyen-508 fills at a constant rate from source that matches the rate of data coming out of the transmit buffer.

Indeed, the argument of the Third Party requester does not address whether the transmit buffer filling rate is constant.  Even though the Third Party requester quoted Fig. 5 of Nguyen-508 for showing the teaching "the same rate limitation," it is not showing that the transmit buffer fills at a constant rate from source that matches the rate of data coming out of the transmit buffer, but the "de-jitter" receive buffer within client/receiver fills at a variable rate for avoiding the phenomenon of network jitter.

The references Chen, ChenFH, and Nguyen-058 set forth in the Request have been considered all alone and in combination, but the Request fails to raise a substantial new question of patentability by the references Chen, ChenFH, and Nguyen-058 as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.

*Re. alleged SNQ of patentability raised by Chen taken with ChenFH and Vahalia*

15.      The Request indicates that the Third Party requester considers that a substantial new question of patentability is raised to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent based on Chen taken with ChenFH and Vahalia.

The claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, for which the instant *ex parte* reexamination is requested, essentially require the claimed element "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer; and the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer," which is important to be considered whether the substantial new question of patentability is

raised by Chen taken with ChenFH and Vahalia; however, the Chen patent taken with the filing history of Chen patent and the Vahalia patent does not raise a substantial new question of patentability as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent because of the following reason.

5     As discussed in the above, Chen discloses a system and method for just-in-time retrieval of multimedia files over computer network (See Chen, Fig. 1 and col. 4, line 65 through col. 5, line 44), wherein it initially operates in "rush mode" when once a connection is made to a client machine because there is not enough data in the client agent buffer (See Chen, Fig. 6, claims 18, 29, and col. 6, lines 42-47). This disclosure is teaching and/or suggesting the limitation

10     "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer".

However, Chen and ChenFH do not teach/suggest the other limitation "the media data elements is sent at a rate that matches the constant fill rate of a server buffer" because they do not disclose data flows out of the server 21 at a rate that matches the constant rate of filling data

15     into the stream buffer 11 in Fig. 1 of Chen. Furthermore, Chen and ChenFH are silent upon whether the client machine (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network.

The Third Party requester argues that Vahalia discloses the same rate limitation, i.e.,

20     "the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer" (See the Request at pages 99-100) because it describes that the server buffer fill rate, transmission rate, and playback rate all are the same while in steady state at col. 14, lines 21-24. Nevertheless, the

25     Third Party requester fails to show that data flows out of the stream server at a rate that matches a constant rate of filling data into the buffer cache from integrated cached disk array (i.e., source) in Fig. 4 of Vahalia. Furthermore, Vahalia is silent upon whether the client (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network.

30     The references Chen, ChenFH, and Vahalia set forth in the Request have been considered all alone and in combination, but the Request fails to raise a substantial new question of patentability by the references Chen, ChenFH, and Vahalia as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.

Control Number: 90/014,835                                                  Page 15
Art Unit: 3992                                    *Ex Parte* Reexamination Order Decision

*Re. alleged SNQ of patentability raised by Aharoni*

16.      The Request indicates that the Third Party requester considers that a substantial new
question of patentability is raised to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent based on
5   Aharoni.

The claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, for which the instant *ex parte*
reexamination is requested, essentially require the claimed element "sending initial streaming
media elements to the user system at an initial sending rate more rapid than the playback rate,
to fill the user buffer; and the media data elements is sent at a rate that matches the constant fill
10   rate of a server buffer, and is received at the same rate by the user computer if there are no
interruptions in the transmission of media data between the server and the user's computer,"
which is important to be considered whether the substantial new question of patentability is
raised by Aharoni; however, the Aharoni patent does not raise a substantial new question of
patentability as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent because of the following
15   reason.

Aharoni discloses a system and method for adaptive video/audio transport over a
network (See Aharoni, Abstract), wherein, it initially estimates the bandwidth of the network
connection to the video client before transmission, and the video server appropriately adjusts
the rate of data flow from the video server to the video client based on the initial estimation of
20   the bandwidth of the data channel (See Aharoni, col. 11, lines 31-35).  This disclosure might
anticipate the limitation "sending initial streaming media elements to the user system at an initial
sending rate more rapid than the playback rate, to fill the user buffer".

However, Aharoni does not teach/suggest the other limitation "the media data elements
is sent at a rate that matches the constant fill rate of a server buffer" because it does not teach
25   the claimed subject matter "server buffer," and furthermore, it does not disclose that video
packet (i.e., data) flows out of the video server 18 at a rate that matches the constant rate of
filling the video packets into means for buffering said video packets, if any, in Figs. 1, 2, and 9 of
Aharoni.  Furthermore, Aharoni is silent upon whether the video client (i.e., user computer)
receives the video packets (i.e., multimedia data) at the same rate (i.e., the rate that matches
30   said constant fill rate) when there are no interruptions in the network.

Although the Third Party requester merely alleges that the term "same rate" means the
playback rate and the term "constant fill rate" would simply be the playback rate, the Third Party
requester does not provide any persuasive reason why the terms "same rate" and "constant fill
rate" mean the playback rate in light of the specification of '611 Patent.

   In addition, the Third Party requester fails to show at where the reference Aharoni describes the claimed element "the user computer (i.e., video client) receives the multimedia data (i.e., video packets) at the rate that matches the constant rate of filling said multimedia data into the server buffer (i.e., the same rate) during uninterrupted transmission of said media data (i.e., when there are no interruptions in the network)". In other words, the Third Party requester fails to show that Aharoni teaches or suggests that any means for buffering video packets (i.e., server buffer) fills at a constant rate that matches the rate of said video packets (i.e., data) coming out of the means for buffering video packets (i.e., server buffer). Indeed, the argument of the Third Party requester does not address whether the means for buffering video packets (i.e., server buffer), if any, filling rate is constant.

   The reference Aharoni set forth in the Request has been considered, but the Request fails to raise a substantial new question of patentability by the reference Aharoni as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.

*Re. alleged SNQ of patentability raised by Chen taken with ChenFH and Nguyen-413*

17.      The Request indicates that the Third Party requester considers that a substantial new question of patentability is raised to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent based on Chen taken with ChenFH and Nguyen-413.

   The claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, for which the instant *ex parte* reexamination is requested, essentially require the claimed element "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer; and the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer," which is important to be considered whether the substantial new question of patentability is raised by Chen taken with ChenFH and Nguyen-413; however, the Chen patent taken with the filing history of Chen patent and the Nguyen-413 patent does not raise a substantial new question of patentability as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent because of the following reason.

   As discussed in the above, Chen discloses a system and method for just-in-time retrieval of multimedia files over computer network (See Chen, Fig. 1 and col. 4, line 65 through col. 5, line 44), wherein it initially operates in "rush mode" when once a connection is made to a client machine because there is not enough data in the client agent buffer (See Chen, Fig. 6, claims 18, 29, and col. 6, lines 42-47). This disclosure is teaching and/or suggesting the limitation

"sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer".

However, Chen and ChenFH do not teach/suggest the other limitation "the media data elements is sent at a rate that matches the constant fill rate of a server buffer" because they do not disclose data flows out of the server 21 at a rate that matches the constant rate of filling data into the stream buffer 11 in Fig. 1 of Chen.  Furthermore, Chen and ChenFH are silent upon whether the client machine (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network.

The Third Party requester argues that Nguyen-413 discloses the same rate limitation, i.e., "the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer" (See the Request at pages 128-129).

Contrary to the Third Party requester's argument, Nguyen-413 does not teach/suggest the same rate limitation *foregoing* because it does not disclose data flows out of the server/proxy 310 at a rate that matches a constant rate of filling data into the transmit buffer 314 from source in Fig. 3 of Nguyen-413.  Furthermore, Nguyen-413 is silent upon whether the client/receiver (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network.

The references Chen, ChenFH, and Nguyen-413 set forth in the Request have been considered all alone and in combination, but the Request fails to raise a substantial new question of patentability by the references Chen, ChenFH, and Nguyen-413 as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.

*Re. alleged SNQ of patentability raised by Nguyen-413 taken with Nguyen-058*

18.      The Request indicates that the Third Party requester considers that a substantial new question of patentability is raised to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent based on Nguyen-413 taken with Nguyen-058.

The claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, for which the instant *ex parte* reexamination is requested, essentially require the claimed element "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer; and the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no

interruptions in the transmission of media data between the server and the user's computer,"
which is important to be considered whether the substantial new question of patentability is
raised by Nguyen-413 taken with Nguyen-058; however, the Nguyen-413 patent taken with the
Nguyen-058 patent does not raise a substantial new question of patentability as to the claims 1,
3, 8, 9, 14, and 15 of the '611 Patent because of the following reason.

      As discussed in the above, Nguyen-413 discloses devices and methods for minimizing
start up delay in transmission of streaming media (See Nguyen-413, Abstract), wherein, at
startup, the portion of the media stream stored in an initial burst transmit buffer of the server is
transmitted at a rate higher (i.e., burst rate) than the fixed frame rate (See Nguyen-413, col. 2,
lines 22-27 and col. 3, lines 27-36). This disclosure is teaching and/or suggesting the limitation
"sending initial streaming media elements to the user system at an initial sending rate more
rapid than the playback rate, to fill the user buffer".

      However, Nguyen-413 does not teach/suggest the other limitation "the media data
elements is sent at a rate that matches the constant fill rate of a server buffer" because it does
not disclose data flows out of the server/proxy 310 at a rate that matches a constant rate of
filling data into the transmit buffer 314 from source in Fig. 3 of Nguyen-413. Furthermore,
Nguyen-413 is silent upon whether the client/receiver (i.e., user computer) receives the data
(i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when
there are no interruptions in the network.

      The Third Party requester merely argues that Nguyen-508 discloses the same rate
limitation, i.e., "the media data elements is sent at a rate that matches the constant fill rate of a
server buffer, and is received at the same rate by the user computer if there are no interruptions
in the transmission of media data between the server and the user's computer" (See the
Request at pages 131) because it also teaches what the reference Nguyen-413 teaches.
Nevertheless, as discussed in the above, Nguyen-413 does not teach/suggest the same rate
limitation because Nguyen-413 never discloses that the transmit buffer 314 fills at a constant
rate from source that matches the rate of data coming out of the transmit buffer in Fig. 3 of
Nguyen-413.

      The references Nguyen-413 and Nguyen-058 set forth in the Request have been
considered all alone and in combination, but the Request fails to raise a substantial new
question of patentability by the references Nguyen-413 and Nguyen-058 as to the claims 1, 3, 8,
9, 14, and 15 of the '611 Patent.

*Re. alleged SNQ of patentability raised by Chen taken with ChenFH and Pejhan*

19.       The Request indicates that the Third Party requester considers that a substantial new question of patentability is raised to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent based on Chen taken with ChenFH and Pejhan.

5             The claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, for which the instant *ex parte* reexamination is requested, essentially require the claimed element "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer; and the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no

10   interruptions in the transmission of media data between the server and the user's computer," which is important to be considered whether the substantial new question of patentability is raised by Chen taken with ChenFH and Pejhan; however, the Chen patent taken with the filing history of Chen patent and the Pejhan patent does not raise a substantial new question of patentability as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent because of the following

15   reason.

            As discussed in the above, Chen discloses a system and method for just-in-time retrieval of multimedia files over computer network (See Chen, Fig. 1 and col. 4, line 65 through col. 5, line 44), wherein it initially operates in "rush mode" when once a connection is made to a client machine because there is not enough data in the client agent buffer (See Chen, Fig. 6, claims

20   18, 29, and col. 6, lines 42-47).  This disclosure is teaching and/or suggesting the limitation "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer".

            However, Chen and ChenFH do not teach/suggest the other limitation "the media data elements is sent at a rate that matches the constant fill rate of a server buffer" because they do

25   not disclose data flows out of the server 21 at a rate that matches the constant rate of filling data into the stream buffer 11 in Fig. 1 of Chen.  Furthermore, Chen and ChenFH are silent upon whether the client machine (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network.

30           The Third Party requester argues that Pejhan discloses the same rate limitation, i.e., "the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer" (See the Request at pages 134-

135) because it describes that the server will simply forward the image sequence directly to the client via the network without further processing at col. 3, lines 31-35. Nevertheless, the Third Party requester fails to show that data flows out of the FIFO buffer 290 at a rate that matches a constant rate of filling data into said FIFO buffer from the video image on path 210 (i.e., source) in Fig. 2 of Pejhan. Furthermore, Pejhan is silent upon whether the client (i.e., user computer) receives the video image (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the network. In fact, Bhat never describes whether the rate of filling data into the FIFO buffer of Server from storage is constant (i.e., constant fill rate), but sending the image sequence to the client at a predefined frame sequence (See Pejhan, Fig. 3).

The references Chen, ChenFH, and Pejhan set forth in the Request have been considered all alone and in combination, but the Request fails to raise a substantial new question of patentability by the references Chen, ChenFH, and Pejhan as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.

*Re. alleged SNQ of patentability raised by Chen taken with ChenFH and Bhat*

20.     The Request indicates that the Third Party requester considers that a substantial new question of patentability is raised to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent based on Chen taken with ChenFH and Bhat.

The claims 1, 3, 8, 9, 14, and 15 of the '611 Patent, for which the instant *ex parte* reexamination is requested, essentially require the claimed element "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer; and the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer," which is important to be considered whether the substantial new question of patentability is raised by Chen taken with ChenFH and Bhat; however, the Chen patent taken with the filing history of Chen patent and the Bhat patent does not raise a substantial new question of patentability as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent because of the following reason.

As discussed in the above, Chen discloses a system and method for just-in-time retrieval of multimedia files over computer network (See Chen, Fig. 1 and col. 4, line 65 through col. 5, line 44), wherein it initially operates in "rush mode" when once a connection is made to a client machine because there is not enough data in the client agent buffer (See Chen, Fig. 6, claims

18, 29, and col. 6, lines 42-47).  This disclosure is teaching and/or suggesting the limitation "sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer".

However, Chen and ChenFH do not teach/suggest the other limitation "the media data

5    elements is sent at a rate that matches the constant fill rate of a server buffer" because they do not disclose data flows out of the server 21 at a rate that matches the constant rate of filling data into the stream buffer 11 in Fig. 1 of Chen.  Furthermore, Chen and ChenFH are silent upon whether the client machine (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in

10   the network.

The Third Party requester argues that Bhat discloses the same rate limitation, i.e., "the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer" (See the Request at pages 138-

15   139) because it describes that the server system must be capable of reading the right data from the disk subsystem over the bus complex into server buffer at least at the same rate as that needed by the respective clients at col. 8, lines 61-64.  Nevertheless, the Third Party requester fails to show that data flows out of the server buffer at a rate that matches a constant rate of filling data into the server buffer from disk subsystem (i.e., source) in Fig. 3 of Bhat.

20   Furthermore, Bhat is silent upon whether the client (i.e., user computer) receives the data (i.e., multimedia data) at the same rate (i.e., the rate that matches said constant fill rate) when there are no interruptions in the ATM network.  In fact, Bhat never describes whether the rate of filling data into the server buffer from disk subsystem is constant (i.e., constant fill rate).

The references Chen, ChenFH, and Bhat set forth in the Request have been considered

25   all alone and in combination, but the Request fails to raise a substantial new question of patentability by the references Chen, ChenFH, and Bhat as to the claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.

### Conclusion

30   21.    The references set forth in the Request have been considered both alone and in combination, however, the Request fails to raise a substantial new question of patentability affecting claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.  Accordingly, the request for *ex parte* reexamination is **DENIED**

**All** correspondence relating to this ex parte reexamination proceeding should be directed:

| | |
|---|---|
| By EFS: | Registered users may submit via the electronic filing system EFS-Web, at https://efs.uspto.gov/efile/myportal/efs-registered |
| By Mail to: | Mail Stop *Ex Parte* Reexam<br>Central Reexamination Unit<br>Commissioner for Patents<br>United States Patent & Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 |
| By FAX to: | (571) 273-9900<br>Central Reexamination Unit |
| By hand: | Customer Service Window<br>Randolph Building<br>401 Dulany Street<br>Alexandria, VA 22314 |

For EFS-Web transmissions, 37 CFR § 1.8(a)(1)(i) (C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if (a) it is transmitted via the Office's electronic filing system in accordance with 37 CFR § 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

*/Christopher E. Lee/*

Christopher E. Lee, Primary Examiner
Central Reexamination Unit / Art Unit 3992

Conferees:

/MY TRANG TON/
Primary Examiner, Art Unit 3992

/ANDREW J. FISCHER/
Supervisory Patent Reexamination Specialist, Art Unit 3992



*Reexamination*

| Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|
| 90/014,835 | 8185611 |
| **Certificate Date** | **Certificate Number** |
|  |  |

**Requester Correspondence Address:** ☐   **Patent Owner** ☑   **Third Party**

Frank M. Gasparo (General)
VENABLE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-3800

| **LITIGATION REVIEW** ☑ | /CEL/ (examiner initials) | 07 September 2021 (date) |
|---|---|---|
| Case Name | | Director Initials |
| Inter Partes Review IPR2015-01035 (Institution Denied) | | |
| Inter Partes Review IPR2015-01162 (Institution Denied) | | |
| Inter Partes Review IPR2015-01657 (Institution Denied) | | |
| 2:14-3456 (ES)(MAH) WAG Acquisition, LLC, v. FriendFinder Networks Inc ., Streamray Inc. (transferred as 5:19cv5036) | | |
| 2:14cv3196-ES-MAH WAG Acquisition, LLC, v. MFCXY, Inc., Lram Company B.V., Leonid Radvinsky, Cybertania, Inc., Activesoft, Inc. | | |
| 2:14cv2674-ES-MAH WAG Acquisition, LLC, v. Flying Crocodile, Inc., Accretive Technology Group (transferred as 2:19cv1278) | | |
| 2:14cv2832-ES-MAH WAG Acquisition, LLC, v. GATTYAN Group, DuodecadIT Services (open) | | |
| 2:19cv1278 WAG Acquisition, LLC, v. Flying Crocodile, Inc. (open) | | |
| 9:19cv81155 WAG Acquisition, LLC, v. Web Power, Inc., et al. (dismissed) | | |
| 4:19cv5036 WAG Acquisition, LLC, v. FriendFinder Networks Inc. et al. ( open) | | |
| 2:15cv3581 WAG Acquisition, LLC, v. Web Power, Inc., et al. (transferred as 9:19cv81155) | | |

| **COPENDING OFFICE PROCEEDINGS** | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |

| /Christopher E. Lee/ Primary Examiner, Art Unit 3992 | |
|---|---|

|  | **Application/Control No.**<br>90/014,835 | **Applicant(s)/Patent Under Reexamination**<br>8185611 |
|---|---|---|
| | **Certificate Date** | **Certificate Number** |

| | |
|---|---|
| ex parte reexamination of family patent US 8,364,839 ( 13/385,375) | 90/014,836 |
| ex parte reexamination of family patent US 8,327,011 ( 13/374,942) | 90/014,833 |
| ex parte reexamination of family patent US 8,122,141 ( 12/800,152) | 90/014,834 |

| | |
|---|---|
| /Christopher E. Lee/<br>Primary Examiner, Art Unit 3992 | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/014,835 | 8185611 |
| | **Examiner** | **Art Unit** |
| | Christopher E Lee | 3992 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Litigation Search performed | 09/07/2021 | /CEL/ |
| Search prosecution history of continuation application 12/800,177, continuation-in-part application 10/893,814, non-provisional application 09/819,337, and provisional application 60/231,997 | 09/27/2021 | /CEL/ |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

| /Christopher E. Lee/ Primary Examiner, Art Unit 3992 | |
|---|---|
| | |

Doc code: IDS                                                                                    PTO/SB/08a (01-10)
Doc description: Information Disclosure Statement (IDS) Filed                    Approved for use through 07/31/2012. OMB 0651-0031
                                                                                U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 90/014,835 |
| --- | --- | --- |
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | Christopher E. Lee |
| | Attorney Docket Number | |

| U.S.PATENTS | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| /CEL/ | 1 | 8185611 | | 2012-05-22 | Price (Ex. 1) | |
| | 2 | 5822524 | | 1998-10-13 | Chen (Ex. 2) | |
| | 3 | 8364839 | | 2013-01-29 | Price (Ex. 6) | |
| | 4 | 7111058 | | 2006-09-19 | Nguyen (Ex. 9) | |
| | 5 | 5933603 | | 1999-08-03 | Vahalia (Ex. 10) | |
| | 6 | 5764961 | | 1998-06-09 | Bhat (Ex. 11) | |
| | 7 | 6850564 | | 2005-02-01 | Pejhan (Ex. 12) | |
| /CEL/ | 8 | 7373413 | | 2008-05-13 | Nguyen (Ex. 20) | |

EFS Web 2.1.17

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | |

| /CEL/ | 9 | 6014694 | | 2000-01-11 | Aharoni (Ex. 21) | |
|---|---|---|---|---|---|---|

If you wish to add additional U.S. Patent citation information please click the Add button.

## U.S.PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

## FOREIGN PATENT DOCUMENTS

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

## NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| /CEL/ | 1 | US 5,822,524 Patent Prosecution File History (Ex. 3) | ☐ |
| /CEL/ | 2 | US 8,185,611 Patent Prosecution File History (Ex. 4) | ☐ |
| /CEL/ | 3 | Final Written Decision on Remand, WebPower v. WAG Acquisition, IPR2016-01238, Paper No. 28 (Jul. 16, 2020) (Ex. 5) | ☐ |

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | |

| | | | |
|---|---|---|---|
| /CEL/ | 4 | Deposition of Dr. Ketan Mayer-Patel, Duodecad IT Services Luxembourg S.a r.l v. WAG Acquisition, IPR2015-01036 (Apr. 6, 2016) (Ex. 7) | ☐ |
| | 5 | Final Written Decision, Duodecad IT Services Luxembourg S.a r.l v. WAG Acquisition, IPR2015-01036, Paper No. 17 (Oct. 20, 2016) (Ex. 8) | ☐ |
| | 6 | Plaintiff's Opening Claim Construction Brief, WAG Acquisition, L.L.C. v. Gattyan Group S.a r.l. et al., No. 2:14-cv-2832-ES-MAH, Dkt. No. 274  (D.N.J. Jan. 7, 2021) (Ex. 13) | ☐ |
| | 7 | Plaintiff's Responsive Claim Construction Brief, WAG Acquisition, L.L.C. v. Gattyan Group S.a r.l. et al., No. 2:14-cv-2832-ES-MAH, Dkt. No. 282  (D.N.J. Mar.4, 2021) (Ex. 14) | ☐ |
| | 8 | Plaintiff's Opening Claim Construction Brief, WAG Acquisition, L.L.C. v. Flying Crocodile, Inc., et al., No. 2:19-cv-01278-BJR, Dkt. No. 263  (W.D. Wash. Mar. 24, 2021) (Ex. 15) | ☐ |
| | 9 | Plaintiff's Responsive Claim Construction Brief, WAG Acquisition, L.L.C. v. Flying Crocodile, Inc., et al., No. 2:19-cv-01278-BJR, Dkt. No. 269  (W.D. Wash. Apr. 14, 2021) (Ex. 16) | ☐ |
| | 10 | Declaration of Dr. Gareth Loy, I.M.L. SLU v WAG Acquisition, IPR2016-01658, Paper 2, Ex. 1006 (Aug. 23, 2016) (Ex. 17) | ☐ |
| | 11 | Decision Institution of Inter Partes Review, I.M.L. SLU v WAG Acquisition, IPR2016-01658, Paper 10 (Feb. 28, 2017) (Ex. 18) | ☐ |
| /CEL/ | 12 | Plaintiff's Redacted Reply ISO Amending the Infringement Contention, WAG Acquisition L.L.C. v. Gattyan Group S.a.r.l., et al., No. 2:14-cv-02832, Dkt. No. 216-6 (D.N.J. filed, Dec. 16, 2019 and dated Nov. 25, 2019) (Ex. 19) | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | /Christopher E. Lee/ | Date Considered | 09/30/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

PETITION

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| *In re* reexamination of: | |
| Price | |
| U.S. Patent No. 8,185,611 | |
| Filing Date: May 10, 2010 | Reexamination Control No.: 90/014,835 |
| Issue Date: May 22, 2012 | Confirmation No. 9923 |
| Application No.: 12/800,177 | Art Unit: 3992 |
| Inventor: Harold Edward Price | Examiner: Christopher E. Lee |
| Title: STREAMING MEDIA DELIVERY SYSTEM | |

Mail Stop *"Ex Parte* Reexam"
ATTN: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**PETITION UNDER 37 C.F.R. §§ 1.515(c) AND 1.181 FOR REVIEW OF EXAMINER'S DECISION DENYING *EX PARTE* REEXAMINATION**

Dear Sir:

Third-Party Requesters FriendFinder Networks Inc. and Streamray Inc. ("Requesters") petition the Director for review of the "Decision Denying *Ex Parte* Reexamination" mailed on November 12, 2021, (the "Order"), in which the United States Patent and Trademark Office (the "Office") refused reexamination of claims 1, 3, 8, 9, 14, and 15 of U.S. Patent No. 8,185,611 ("the '611 Patent").

The prior art identified by the Requesters in their August 25, 2021 Request for *Ex Parte* Reexamination of the '611 Patent (the "Request") raise substantial new questions of patentability of the challenged claims. The Examiner denied the Request on finding that the prior art references fail to teach a single limitation — namely, "the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's

computer," referred to in the Request as claim limitation l[g], 3[h], 8[i], 9[j], 14[g], and 15[h], and hereafter the "Same Rate" limitation.  *See* Request at 23.

This decision is based on several errors, any one of which would be grounds for reversal under the Director's *de novo* review.

*First*, the Examiner adopted an unsupported construction of the Same Rate limitation. The Examiner construed the Same Rate limitation as "a sending rate out of the server corresponds to the constant rate at which said media data elements are transferred into the server buffer at any given time during uninterrupted transmission of said media data elements," pointing to a single sentence in the specification that merely parrots the claim language. The Examiner also failed to justify the insertion of "at any given time" to the construction.  Compounding these legal errors, the Examiner disregarded the proposed construction of the Same Rate limitation in the Request[1]— the same construction advanced by the Patent Owner in seeking to enforce the '611 Patent in litigation—and the accompanying evidence from the claim language and the specification. In sum, the Examiner only considered an isolated citation parroting the claim language while disregarding the intrinsic evidence advanced by the Patent Owner under *Phillips* on the same '611 Patent and same claims.  Under this construction, there are substantial new questions of patentability raised by the prior art cited in the Request.

*Second*, even if the Examiner's construction is adopted, the Order fails to credit Requesters' evidence from the prior art references that teach the Same Rate limitation under that construction. For instance, the Examiner disregarded Requesters' express evidence identifying the relevant rates, in favor of unknown rates not defined by the Examiner.

Accordingly, Requesters respectfully submit that substantial new questions of the patentability of the challenged claims are raised in the Request, and that the Director should order reexamination.

## I.   PERTINENT FACTS

- The '611 Patent to Harold Edward Price issued on May 22, 2012, and is putatively assigned to WAG Acquisitions, LLC (the "Patent Owner.")[2]

---

[1] Requesters proposed to construe the Same Rate limitation as the playback rate, which was derived from the evidence advanced by Patent Owner.  Request, at 23-24.  Requesters note that they propose this construction of the Same Rate limitation for the purposes of this reexamination only.

[2] Requesters do not concede that WAG is in fact the proper owner of the '611 Patent.

- The Patent Owner is currently asserting the '611 Patent in the Northern District of California (*WAG Acquisition, L.L.C. v. FriendFinder Networks Inc., et al.*, No. 3:19-cv-05036-JD) and in the Western District of Washington (*WAG Acquisition, L.L.C. v. Flying Crocodile, Inc. et al.*, No. 2:19-cv-01278-BJR).

- In seeking to enforce the '611 Patent, the Patent Owner has taken affirmative positions on the scope of the '611 Patent claims asserted in federal district court and for which reexamination is sought in the Request. *See* Request, at Exs. 13-16.[3]

- On August 25, 2021, the Requesters filed a request for *ex parte* reexamination of claims 1, 3, 8, 9, 14, and 15 of the '611 Patent. The Request was assigned Control Number 90/014,835.

- A "Decision Denying *Ex Parte* Reexamination" was mailed on November 12, 2021, refusing reexamination of the challenged claims.[4]

## II.   POINTS TO BE REVIEWED

A.   Whether the Examiner's claim construction of the Same Rate limitation—relying on a single sentence from the specification and improperly disregarding Requesters' evidence—was erroneous.

B.   Whether, under the Requesters' proposed claim construction, the prior art cited in the Request raise substantial new questions of patentability.

C.   Whether, even under the Examiner's claim construction, the prior art cited in the Request that explicitly teach matching rates during steady-state conditions (as allegedly recited in the challenged claims) raise substantial new questions of patentability.

## III.   LEGAL STANDARD

### A.   Director's *De Novo* Review

The Director reviews *de novo* the Examiner's determination that a substantial new question of patentability has not been raised. MPEP § 2248.

*Ex parte* reexamination should be ordered when "the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important

---

[3] The Exhibits cited in this Petition are those filed with the Request.

[4] Separately, the Office has ordered reexaminations on all challenged claims of three related patents, denoted as 90/014,833 (U.S. Patent No. 8,327,011); 90/014,834 (U.S. Patent No. 8,122,141); and 90/014,836 (U.S. Patent No. 8,364,839).

in deciding whether or not the claim is patentable" and that the same question has not been previously decided, *i.e.*, that the question of patentability is "new."  37 CFR § 1.525; MPEP § 2242.  As such, "[i]t is not necessary that a 'prima facie' case of unpatentability exist as to the claim in order for 'a substantial new question of patentability' to be present as to the claim. Thus, 'a substantial new question of patentability' as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications."  MPEP § 2242.

### B.    Claim Construction

Because the '611 Patent has expired, the claims are given their "ordinary and customary meaning" and construed according to the principles set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005); Request, at 21-22 (citing standard). Under *Phillips*, the analysis begins on the most important consideration: the language of the claims.  *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1355 (Fed. Cir. 2014) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention.") (internal quotation and alteration omitted).

## IV.    ARGUMENT

### A.    The Examiner's Construction of the Same Rate Limitation Is Unsupported

The Examiner construed the Same Rate limitation ("the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer") as "a sending rate out of the server corresponds to the constant rate at which said media data elements are transferred into the server buffer at any given time during uninterrupted transmission of said media data elements."  Order at 7.  The Examiner fails to support this construction with sufficient intrinsic evidence under *Phillips*.

The Examiner based this construction on a single sentence in the specification, one which merely restates the claim language: "In this steady state condition, the media data is sent at a rate that matches the constant fill rate of the server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer (with some variation in the case of VBR content)." '611 Patent (Ex. 1), at 7:65-8:4; Order at 7. The Examiner provides no additional evidence. Despite this citation merely

parroting the claim language, the Examiner also inserted "at any given time" into the construction without any explanation. This is further insufficient under *Phillips*.

Equally problematic, the Examiner summarily disregarded Requesters' proposed construction of the Same Rate limitation as the playback rate, which was derived from the evidence advanced by Patent Owner on the same '611 Patent. Order at 8; Request, at 23-24. The Examiner did so in reliance on two irrelevant cases because they involve the Office applying the broadest reasonable interpretation standard for interpreting claim terms during prosecution of a patent application and courts applying a different claim construction standard. Order, at 6; *In re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989) ("During patent examination the pending claims must be interpreted as broadly as their terms reasonably allow."); *In re Morris*, 127 F.3d 1048, 1053-54 (Fed. Cir. 1997); MPEP § 2111 ("broadest reasonable interpretation"). But, in this *ex parte* reexamination **the Office and courts both apply the same claim construction standard, *Phillips*,** for an expired patent and thus it was improper for the Office to reject Requesters' evidence. Order, at 6 ("Office does not interpret claims when examining patent applications in the same manner as the courts.") (internal citations omitted); Request, at 21-22 (citing cases).

The evidence included, as Patent Owner noted, that the "playback rate" is "directly present in the language of the claims themselves and interrelates with the sending and receiving rates in the instant clause." Request at 24; Request Ex. 14 at 10. For instance, claim 1 recites that the system will "play back the streaming media at a playback rate for viewing or listening by said at least one user" and separately recites "sending further streaming media data elements to the user system ***at about the playback rate***, and wherein the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer…" '611 Patent (Ex. 1) at claim 1 (emphasis added); *see* Request Ex. 14 at 10. While statements made by the Patent Owner in litigation are not considered at the determination phase,[5] the Office should still consider the intrinsic evidence cited in the Request and advanced by Patent Owner under *Phillips* in construing the same '611 Patent and same claims under *Phillips*. In addition to the claim language, the Patent Owner also points to language in the specification supporting the construction that these rates match the playback rate: "[t]he audio or video data is delivered from the source ***at the rate it is to be played out***." '611 Patent (Ex. 1), at 2:41-43 (emphasis added); *see* Request Ex. 14 at 11.

---

[5] *See* 35 U.S.C. §§ 301(a) and (d); 37 CFR § 1.515(a).

Accordingly, Requesters respectfully submit that for the purposes of this reexamination the Same Rate limitation be construed, as understood by the Patent Owner based on the claim language itself, to simply mean the playback rate.

## B.   Under the Requesters' Proposed Same Rate Construction, the Request Raises Substantial New Questions of Patentability

Under the proposed construction of the Same Rate limitation as the playback rate, the references in the Request raise a substantial new question of patentability, such as Chen/Chen FH, Nguyen-058, Nguyen-413, and Vahalia. Each teach streaming media using a fixed or constant playback rate.

For instance, Chen/Chen FH describe during NORMAL mode transmitting and receiving data at a playback rate, *e.g.*, 30 frames per second:

> This invention times the transmission of multimedia files according to a fixed rate, generally the frame rate during normal transmission. For example, if the client machine can display 30 frames per second, the server will transmit a frame of compressed video starting at each 1/30th second, regardless of the complexity of the video frame. The client machine needs to store in its memory only one, or a few, frames as new frames are transmitted to it at a regular rate (frame rate).

Chen (Ex. 2), at 4:33-41; Chen File History (Ex. 3), at ChenFH086 ("Normal mode: transmit data according to time and player's playout rate."); Request, at 41.

The data must be loaded into the server buffer at the playback rate because Chen could not transmit and play at the playback rate in NORMAL mode "most of the time" as required unless the data was loaded at the same playback rate in the server buffer. Chen (Ex. 2), at 6:32-36 ("In this mode the server (1) paces its transmission so that the data for a single video frame is transmitted in the time of a single video frame (normally 1/30 second) ...."); Request, at 42.

Chen even describes a scheduler at the server to ensure that this playback rate timing of 30 frames per second is met. Chen (Ex. 2), at 4:10-13 ("the present invention uses the timing information in the index file to (i) ensure transmission of a video frame in a frame time under normal circumstances, *e.g.*, 30 frames per second. . . ."); 9:21-30 ("The transmission scheduler (13) drives the data flow. Its main tasks include reading data out of the storage subsystem (12), packetization, and packet transmission. It maintains the stream buffer (18) which stores data awaiting transmission. To avoid overloading the network and/or the client agent's receiving buffer, the transmission scheduler (13) properly schedules the data execution path, by considering the

timing specification in the multimedia files and the timing requirements of the applications."); Request, at 42.

Both Nguyen references similarly teach a system where the rates into and out of the server buffer and received by the user are all equal to the playback rate. Nguyen-058 teaches that the media should be sent and received (played) at a "fixed frame rate" of, *e.g.*, 25 frames per second for video:

> The server 310 preferably includes a transmit buffer 314, that is also known as transmitting means 314. Buffer 314 is for buffering data received from a source, and for transmitting to the network 150 at the regular rate, such as at a fixed frame rate r required by the streaming media in question. The frame rate r may be, for example, 100 frames per second for all audio, or 25 frames per second for video. The streaming media may have a constant or a variable transmission rate.

Nguyen-058 (Ex. 9), 3:23-29; claim 10 ("The server of claim 7 [1] [see Certificate of Correction] where the transmit buffer sends the frames to the network at a fixed frame rate "); Request at 92.

Separately, Nguyen-413 teaches the Same Rate limitation because it transmits and receives (plays) data at a fixed playback or frame rate (*e.g.*, 25 frames per second) when there are no interruptions. "Transmission through the regular path 312 is intended to be at the regular rate, such as at a fixed frame rate r required by the streaming media in question. The frame rate r may be, for example, 100 frames per second for all audio, or 25 frames per second for video. The streaming media may have a constant or a variable transmission rate." Nguyen-413 (Ex. 20), at 3:20-26; 1:46-49 ("the client 160 includes a fixed size de-jitter receive buffer 162. The buffer 162 first fills up to its size, and then starts playing out. While playing out, the buffer 162 is emptied at the same rate as it is filled."); 4:65-67 ("[t]he regular rate is intended to be the normal frame rate of the streaming media."); *see also* Abstract ("Then transmission is switched to the regular rate, from the regular buffer."); 2:22-27 ("Then transmission is switched to the regular rate."); 1:20-21 ("A fundamental requirement for streaming media is that it has to be played at a constant rate"); Request at 73.

Likewise, Vahalia describes that the server buffer fill rate, server transmission rate, and client receive rate all equal the playback rate. Vahalia (Ex. 10), at 14:13-18 ("video file server operating in steady state. The steady state operation the video file server consists of servicing n streams at the rate of $R_i$ bytes/second for each stream (i.e., $R_1$ is the ith stream's playback rate)"); 14:18-26 ("The rate at which the network buffer is emptied needs to be equal to the rate at which

the disk buffer is filled up; the goal is that both rates are the same as the stream's playback rate. When the network buffer is empty, the disk buffer is full. At that moment the buffers interchange their roles."); Request, at 100.

Accordingly, under Requesters' proposed construction, the Request raises substantial new questions of patentability.[6]

### C.   Even Under the Examiner's Same Rate Construction, the Request Raises Substantial New Questions of Patentability

Several prior art references (*e.g.*, Nguyen-413, Vahalia, Nguyen-058, Bhat) expressly teach the Same Rate limitation under the Examiner's construction and thus raise a substantial likelihood that a reasonable examiner would consider them important. The Examiner here though disregarded such explicit rates in favor of speculating that the challenged claims require different (unknown) rates. This is improper because it fails to address Requesters' evidence and instead, imposes unsupported and heighten requirements for the Same Rate limitation.

#### 1.   Nguyen-413

Nguyen-413 expressly teaches in the specification the Same Rate limitation. The Examiner apparently agrees that Nguyen-413 teaches the client receiving and playing data at the same rate (Order, at 10) and agrees Nguyen-413 teaches a transmit rate (*id.*, at 11), but contends this is not the same constant rate to fill the server buffer.  Order, at 10-11.  This is incorrect.

Nguyen-413 teaches that, "the client 160 includes a fixed size de-jitter receive buffer 162. . . . ***While playing out, the buffer 162 is emptied at the same rate as it is filled.***"  Nguyen-413 (Ex. 20), 1:46-49 (emphasis added); Request, at 73.  Nguyen-413 further describes that the server transmits at that constant or fixed "playing out" rate termed the regular rate.  Nguyen-413 (Ex. 20), at Abstract ("Then transmission is switched to the regular rate, from the regular buffer"); 4:63-67 ("According to a box 490, the second portion is transmitted to the network through the regular path. . . . The regular rate is intended to be the normal frame rate of the streaming media."); 3:20-22 ("Transmission through the regular path 312 is intended to be at the regular rate, such as at a fixed frame rate r"); Request, at 73.  Thus, the evidence demonstrates that in Nguyen-413, the client receives at the regular or constant frame rate and server transmits at that same constant frame rate — precisely what is required by the Examiner's construction.

---

[6] The evidence discussed in Section C for the prior art references is equally applicable here.  *See* pages below 8-12.

Nguyen-413 further describes loading the server buffer at that same regular or constant frame rate. Nguyen-413 teaches that a "server comprising": "a ***regular path*** for transmitting data received from a ***source*** at a ***regular rate***; a ***first buffer in*** the ***regular path*** for ***buffering data*** from the ***source prior to transmission to the client***." Nguyen-413 (Ex. 20), at claim 1 (emphasis added); Request, at 74. Hence, the first or server buffer loads data from the source at that regular or constant frame rate. Other evidence in Nguyen-413 reinforces this view that the server buffer loads data through the regular path from the source at that constant frame or regular rate. Nguyen-413 (Ex. 20), at claim 7 ("the regular path for transmitting data received from the source over the network at the regular rate"); 3:17-26 ("Preferably, the ***transmit buffer 314 is located in the regular path 312, for buffering data from the source***. Transmission ***through the regular path 312 is intended to be at the regular rate***, such as at a ***fixed frame rate r*** required by the streaming media in question.") (emphasis added); 1:20-21 ("A fundamental requirement for streaming media is that it has to be played at a constant rate"); Request, at 73-74. Thus, Nguyen-413 teaches that the server fills at a rate that is equal to the constant (fixed) frame rate.

At all stages—client receiving, server transmitting, and server buffer loading—Nguyen-413 employs the same constant frame or regular rate. *See also* Request, at 64-65 (outlining with citations that Nguyen-413 provides the same solution as alleged in the '611 Patent). Accordingly, a reasonable examiner would find Nguyen-058's same rates important to the Same Rate limitation and thus Nguyen-413 raises a substantial new question of patentability.

### 2.    Vahalia

Vahalia also teaches the Same Rate limitation by virtue of its steady state condition, the same condition the Examiner relied on for his Same Rate construction. Order, at 7 (citing '611 Patent (Ex. 1), at 7:65-8:4). Vahalia teaches "an integrated cached disk array storage subsystem and a plurality of stream server computers linking the cached disk storage subsystem to a data network for the transfer of video data streams." Vahalia (Ex. 10), at Abstract; Request, at 99-100.

Vahalia describes that while in steady state the server buffer fill rate, transmission rate, and playback rate all are the same. Specifically, Vahalia teaches, "It is convenient to describe the disk scheduling and admission control for access to storage devices by viewing the ***video file server*** operating in ***steady state***. The ***steady state operation*** the video file ***server*** consists of ***servicing n streams*** at the ***rate*** of $R_i$ ***bytes/second*** for ***each stream*** (i.e., $R_I$ ***is the ith stream's playback rate***)." Vahalia (Ex. 10), at 14:13-18 (emphasis added); Request, at 100. This describes that the server is

in steady state and during this steady state, the server transmits to clients at the same rate of $R_i$ bytes/second, which is the client's playback rate. As such, the server transmits and the client receives at the same playback rate. To conclude otherwise would mean that the term "stream's playback rate" taught in Vahalia has no meaning.

Vahalia further teaches that during steady state, the server buffer (network buffer or disk buffer) loads data at that same constant playback rate ($R_i$ bytes/second):

> For each stream the video file server maintains two buffers: a disk buffer and a network buffer. In **steady state**, a network task empties the network buffer and a disk task fills up the disk buffer. The two operations are performed in parallel. The **rate at which the network buffer is emptied needs to be equal to the rate at which the disk buffer is filled up**; the goal is that **both rates are the same as the stream's playback rate**. When the network buffer is empty, the disk buffer is full. **At that moment the buffers interchange their roles**.

Vahalia (Ex. 10), at 14:18-26 (emphasis added); Request, at 100. In sum, Vahalia describes a steady state condition in which the server buffer fill rate, server transmission rate, and client receive rate all equal the playback rate. Accordingly, Vahalia raises a substantial new question of patentability.

### 3.    Nguyen-058

Likewise, Nguyen-058 also describes that same steady state condition as relied on by the Examiner for the Same Rate construction. *Compare* '611 Patent (Ex. 1), at 7:65-8:4 (Order, at 7), *with* Nguyen-058 (Ex. 9), at 4:49-65; 3:23-29. Nevertheless, the Examiner contends that the challenged claims require different rates than those taught in Nguyen-058. Order, at 12-13. This is incorrect, because Nguyen teaches that a transmit buffer 314 is filled from a source at a rate that is equal to the media playout rate, which is the same playout rate at which data is sent by the server and received by the client.

Nguyen-058 describes in steady state that the server transmits and the client receives at the same playout (playback) rate, "assuming no prior interruptions":

> The performance of the invention can be now appreciated with reference to FIG. 5. . . . A dashed line 530 represents the instantaneous rate of receiving **data through the network 150 in client 360**. In FIG. 2, the line 530 starts at a value fy, which is the **steady state, assuming no prior interruptions** in the transmission. **The value fy is again the streaming media play out rate, which is how fast the data stream is being transmitted from the server 310.**

Nguyen-058 (Ex. 9), at 4:49-65 (emphasis added); 1:66-2:4 ("In FIG. 2, the line 230 starts at a value fy, which is the steady state, assuming no prior interruptions in the transmission. The value fy is also the streaming media play out rate."); Request, at 93.  This steady state in Nguyen-058— where the server transmits and the client receives at the same playout rate—reads precisely on the Same Rate limitation, including "wherein the media data elements is sent at a rate…[and] is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer."

The server buffer (transmit buffer) also loads data from the source at this same playout or constant rate (*e.g.*, 25 frames per second).

> The ***server 310*** preferably includes a ***transmit buffer 314, that is also known as transmitting means 314. Buffer 314 is for buffering data received from a source, and for transmitting to the network 150 at the regular rate, such as at a fixed frame rate r*** required by the streaming media in question. The frame rate r may be, for example, 100 frames per second for all audio, or 25 frames per second for video. The streaming media may have a constant or a variable transmission rate.

Nguyen-058 (Ex. 9), at 3:23-29 (emphasis added); claim 10 ("The server of claim 7 [1] [see Certificate of Correction] where the transmit buffer sends the frames to the network at a fixed frame rate."); Request, at 92. Thus, the server buffer fills at the same constant playout rate.

Nguyen-058 even provides a figure below outlining the foregoing, where the server and client are in steady state according to the horizontal lines with a constant playout (regular) rate:



FIG.5

11

Nguyen-413 (Ex. 20), at Fig. 5 (annotations added); Request, at 93.  Such horizontal lines above clearly show that the rate is constant from the server to the client.  The server and client in Nguyen-058 would not be in steady state unless the server's buffer was filling at the same rate it is transmitting. Stated another way, adopting the Examiner's view would read out Nguyen-058's express steady-state teaching—disclosed in both the written description and figures—and undermine the Examiner's own claim construction, which is entirely dependent on an alleged steady-state condition.

Accordingly, a reasonable examiner would find Nguyen-058's teaching of the same rates important to the patentability of the '611 Patent and Nguyen-058 thus raises a substantial new question of patentability.

### 4.    Bhat

The Examiner with limited explanation contends the Bhat fails to teach the Same Rate limitation.  Order, at 21.  But, Bhat describes that the server buffer loading rate, server transmitting rate, and client receiving rate all equal.

Bhat is directed to a double-buffering method (server buffer and client buffer) for transmitting streaming media.  Bhat (Ex. 11), at Abstract; Request, at 138.  Bhat further teaches that the system "must be capable of *reading the right data* from the disk subsystem over the bus complex *into server buffer* at least *at the same rate as that needed* by the *respective clients*."  Bhat (Ex. 11), at 8:62-64 (emphasis added); Request, at 139.  Thus, Bhat describes loading the server buffer at the same rate as the rate needed by each client.

Bhat further teaches that the server transmits at this client-needed rate and the client receives at that same rate.  Bhat (Ex. 11), at 8:46-50 ("An application requirement is that the system including the *server and the network should simultaneously feed all active clients with data at the rate the clients need so that no client starves and no data overflow occurs in any buffer within the entire system*.") (emphasis added); Request, at 139.  Such transmitting and receiving at the same rate ensure "no data overflow occurs in any buffer within the entire system."  *Id.*

Accordingly, Bhat teaches the Same Rate limitation and raises a substantial new question of patentability.

## V.    CONCLUSION AND ACTION REQUESTED

Requesters have demonstrated that the Examiner's refusal to order reexamination of claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is in error. The Requesters respectfully request that the

Office order reexamination of the '611 Patent because the Request raises substantial new questions of patentability.

This Petition is timely filed under 37 C.F.R. § 1.515(c).  Please charge any necessary fee or credit any overpayment pursuant to 37 C.F.R § 1.20(c)(1)(ii)(6) to our Deposit Account No. 22-0261.

Respectfully submitted,

Dated: December 10, 2021                 By: /Frank Gasparo/

Frank M. Gasparo (Reg. No. 44,700)
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
T 212-370-6273
F 212-307-5598
fmgasparo@Venable.com

Attorney for Requesters

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a true and correct copy of the foregoing **PETITION UNDER 37 C.F.R. §§ 1.515(c) AND 1.181 FOR REVIEW OF EXAMINER'S DECISION DENYING *EX PARTE* REEXAMINATION** to be served via Federal Express Overnight on the following correspondence address of record for U.S. Patent. No. 8,185,611:

<div align="center">

Ernest D. Buff
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster NJ 07921

</div>

Dated: December 10, 2021

By: /Frank Gasparo/

Frank M. Gasparo (Reg. No. 44,700)
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
T 212-370-6273
F 212-307-5598
fmgasparo@Venable.com

Attorney for Requesters

EXHIBIT D



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address:  COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/014,836 | 08/25/2021 | 8364839 | 125737.538655 | 7895 |

7590        09/30/2021

Ernest D. Buff
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921

| EXAMINER |
|---|
| CAMPBELL, JOSHUA D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/30/2021 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

VENABLE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-3800

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/014,836* .

PATENT UNDER REEXAMINATION   *8364839* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| ***Order Granting Request For Ex Parte Reexamination*** | **Control No.** 90/014,836 | **Patent Under Reexamination** 8364839 |
|---|---|---|
| | **Examiner** JOSHUA D CAMPBELL | **Art Unit** 3992 | **AIA (FITF) Status** No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>08/25/2021</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐   PTO-892,   b)☑   PTO/SB/08,   c)☐   Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /JOSHUA D CAMPBELL/ Primary Examiner, Art Unit 3992 | | |
|---|---|---|

cc:Requester ( if third party requester )

## Decision on Request

1)      A substantial new question (SNQ) of patentability affecting claim 2 of United States Patent

Number 8,364,839 (hereinafter "Price") is raised by the request for *ex parte* reexamination filed 25

August 2021.

### *Information Disclosure Statement*

2)      Where the IDS citations are submitted but not described, the examiner is only responsible for

cursorily reviewing the references. The initials of the examiner on the PTO-1449 indicate only that degree

of review unless the reference is either applied against the claims, or discussed by the examiner as

pertinent art of interest, in a subsequent office action.

See Guidelines for Reexamination of Cases in View of In re Portola Packaging, Inc., 110 F.3d

786, 42 USPQ2d 1295 (Fed. Cir. 1997), 64 FR at 15347, 1223 Off. Gaz. Pat. Office at 125 (response to

comment 6).

Consideration by the examiner of the information submitted in an IDS means that the examiner

will consider the documents in the same manner as other documents in Office search files are considered

by the examiner while conducting a search of the prior art in a proper field of search. The initials of the

examiner placed adjacent to the citations on the PTO-1449 or PTO/SB/08A and 08B or its equivalent

mean that the information has been considered by the examiner to the extent noted above.

Regarding IDS submissions MPEP 2256 recites the following: "Where patents, publications, and

other such items of information are submitted by a party (patent owner) in compliance with the

requirements of the rules, the requisite degree of consideration to be given to such information will be

normally limited by the degree to which the party filing the information citation has explained the content

and relevance of the information."

## Prior art cited in the Request

3)      The present request indicates that the Requester considers that a substantial new question of

patentability is raised as to claim 2 of the Price patent by the following prior art references:

    a.    **Chen** – U.S. Patent No. 5,822,524

    b.    **Chen File History** – U.S. Patent No. 5,822,524 Patent File History

    c.    **Goldhor** – U.S. Patent Application Publication No. 2002/0052967

    d.    **Ludwig** – U.S. Patent No. 6,765,889

    e.    **Blackard** – U.S. Patent No. 5,918,020

    f.    **Allman**  – "TCP Congestion Control"

    g.    **Patel** – "NMFS: Network Multimedia File System Protocol"

## Prosecution History

4)      The Price patent application was assigned serial number 13/385,375.  During the original

prosecution, the Price application initially included claims 1-24.  The Price application was a continuation

of application 12/800,177 (U.S. Patent 8,185,611), which was a continuation of application 10/893,814

(U.S. Patent 7,716,358), which was a continuation-in-part of application 09/819,337 (U.S. Patent

6,766,376), all of which rely on Provisional Application 60/231,997, filed on September 12, 2000.  The

examiner never applied a rejection to the claims, rather the examiner presented patent owner with the

option to incorporate the limitations found in dependent claims 2, 10, and 18 into their respective parent

independent claims to make the claims allowable.  The patent owner agreed to the examiner's suggestion

and the amendment was carried out by the examiner in the Notice of Allowance mailed September 14,

2012.  The examiner made the following statement of reasons for allowance in the notice of allowance:

> 2.     The following is an examiner's statement of reasons for allowance: the prior art
> neither solely nor combined discloses "detecting if there is an interruption or delay in the
> streaming data and if there is such an interruption or delay performing a server buffer
> reloading step, wherein, if such an interruption is detected, the server buffer is reloaded
> with a specified amount of the streaming media data elements, or a pointer to the server
> buffer is adjusted to point to a location therein, beginning sequentially from the first of
> the streaming media data elements so determined to have been delayed or not
> received, the specified amount of streaming media data elements being sufficient for the
> user system to continue playing back the streaming media at the playback rate, while
> the user buffer continues to refill".

Following the issuance of the Price patent, IPR2015-01036 was instituted and a Final Written Decision
was issued that found claims 1, 3, 4, 6, 8, 10, 11, 13, 15, 17, 18, and 20 unpatentable in view of the art
presented in said proceeding.  Claims 7, 14, and 21 were found to be patentable.  An Inter Partes Review
Certificate issued on February 5, 2021 canceling claims 1, 3, 4, 6, 8, 10, 11, 13, 15, 17, 18, and 20.

IPR2016-01239, IPR2017-00784, and IPR2017-00785 were instituted and joined.  A Final
Written Decision was issued that found claims 5, 12, and 19 unpatentable in view of the art presented in
said proceeding.  An Inter Partes Review Certificate issued on January 4, 2021 canceling claims 5, 12, 19.
On February 27, 2018 a decision was entered by the PTAB terminating the proceeding and vacating the
institution of said proceeding.  No final written decision was provided regarding the patentability of the
claims in question.

Additionally, IPR2016-01658 and IPR2017-01179 were instituted and joined against claims 2, 5,
9, 12, 16, and 19 of the Price patent.  On February 27, 2018 a decision was entered by the PTAB
terminating the proceeding and vacating the institution and joinder of said proceedings.  No final written
decision was provided regarding the patentability of the claims in question.

Thus as it currently stands based on the prosecution history of the Price application, it appears
patent claim 2 of the Price patent was allowed at least in part based on sole limitation found in claim 2

regarding "The method of claim 1, further comprising sending to the user system unsent streaming media

data elements in the server buffer at a sending rate more rapid than the playback rate."

### *Priority and Patent Term*

5)      As mentioned above, the Price patent matured from the '375 application, which was a

continuation of the '177 application, which was a continuation of the '814 application, which was a

continuation-in-part of the '337 application, all of which rely on Provisional Application 60/231,997,

filed on September 12, 2000.  Thus the '375 application is granted an effective filing date of September

12, 2000.

6)      MPEP 2701(I) states the following:

> *A patent granted on a continuation, divisional, or continuation-in-part application that was filed*
>
> *on or after June 8, 1995, will have a term which ends twenty years from the filing date of earliest*
>
> *application for which a benefit is claimed under 35 U.S.C. 120, 121, 365(c), or 386(c)  regardless*
>
> *of whether the application for which a benefit is claimed under 35 U.S.C. 120, 121, or 365(c)*
>
> *was filed prior to June 8, 1995.*

Based on the citation above, the Price patent is expired.  The term of twenty years from the filing date of

the Price patent has passed and the Price patent has no term adjustment.

7)      37 C.F.R. 1.530(j) states, "No enlargement of claim scope. No amendment may enlarge the scope

of the claims of the patent or introduce new matter. ***No amendment may be proposed for entry in an***

***expired patent. Moreover, no amendment, other than the cancellation of claims, will be incorporated***

***into the patent by a certificate issued after the expiration of the patent.***" (emphasis added).  Thus,

because the patent is expired no amendments of the claims will be allowed aside from the cancellation of

claims.

Additionally, in making the determination of whether to order reexamination, the Office will

determine the proper meaning of the patent claims by giving the claims their broadest reasonable

interpretation consistent with the specification (see In re Yamamoto, 740 F.2d 1569 (Fed. Cir. 1984)),

except in the case of an expired patent (in a reexamination involving claims of an expired patent, claim

construction is pursuant to the principle set forth by the court in Phillips v. AWH Corp., 415 F.3d 1303,

1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005) (words of a claim "are generally given their ordinary and

customary meaning" as understood by a person of ordinary skill in the art in question at the time of the

invention, see Ex parte Papst-Motoren, 1 USPQ2d 1655 (Bd. Pat. App. & Inter. 1986)).

### Substantial New Question of Patentability

8)      The italicized section of claim 2 is utilized by the examiner to show how specific teachings of the

proposed references create a substantial new question of patentability.

> 2. The method of claim 1, further comprising *sending to the user system unsent streaming
>
> media data elements in the server buffer at a sending rate more rapid than the playback
>
> rate.*

### Chen in view of Chen File History

9)      The Request shows that Chen and the Chen File History provide teachings relevant to the

determination of patentability regarding the following limitations, for claim 2:

> *sending to the user system unsent streaming media data elements in the server buffer at a sending
>
> rate more rapid than the playback rate.*

> Chen describes a system for the "just-in-time" retrieval of multimedia files over a
>
> computer network.  Figure 1 of Chen is reproduced below:



FIG.1

Figure 1 shows client machine 20 receiving data streamed from server machine 21 over a
network.  Data packets are loaded into a "server control stream buffer" 1 for streaming over
data channel 6.  Streamed packets are accumulated in "client agent packet buffer" 31 for
playback (Fig. 1, column 4, line 21, and column 4, line 65-column 5, line 44 of Chen).

Chen describes "normal," "rush," and "pause" transmission modes for streaming from a
server to a user (column 6, lines 1-15 of Chen).  It describes a "water mark" model for
buffering streaming content (column 6, lines 16-54 of Chen).  The server buffer is like a
water bucket having high and low "water marks."  Water exits the bucket through a spout
similar to data exiting a packet buffer as its content is delivered to a user.  When water in the
bucket is at a level between the water marks, transmission occurs in the normal mode.  The
normal mode carries out frame level pacing, or in other words transmission at the playback
rate (column 10, lines 3-4 of Chen).  When the amount of data falls below the low mark, the
transmission mode changes to "rush" (column 6, lines 42-47 of Chen).  In rush mode, frame
level pacing is ignored and data is transmitted as fast as possible (Fig. 6 and claims 18 and 29
of Chen).

It has been determined that the Chen File History qualifies as prior art and was publically
available as of October 13, 1998.  Similar to the decision by the PTAB in IPR2015-01036
(pages 18 and 19, Decision – Institution of Inter Partes Review, entered October 23, 2015),
the examiner has determined that the reference constitutes a printed publication under 35
U.S.C. 102(b) and was publically accessible, thus the reference qualifies as prior art against
the challenged claims.  Chen File History shows that during prosecution of the application

eventually issuing as Chen, patent applicant submitted a Declaration in accordance with 37

C.F.R. 1.131 for the purpose of predating a citing reference (pages 77-79 of Chen File

History).  The Declaration references a "Quick Video Server" ("QVS") exhibit document

alleged to describe a commercial embodiment of Chen (page 77 of Chen File History).  The

Declaration includes a claim chart mapping the technical document provided for the QVS to

the then-pending claims (pages 112-119 of Chen File History).  Chen File History describes a

protocol used by the QVS as shown below (page 86 of Chen File History).

### QVS Client Server Protocol

1. MMIO Procedure

| Player | Client Agent (CA) | Server Control (SC) | Comments |
|---|---|---|---|
| Open File  → <br><br> return code  ← | Relay the command <br><br> ← ACK or NACK | Admissible? <br> • Server B/W? <br> • File permission? <br> ← ACK or NACK | If ACK, <br> • Establish Qs <br> • Read data from disk and rush them to CA |
| Close File  → <br><br> return code  ← | Relay the command <br><br> ← ACK or NACK | Consistency check? <br><br> ← ACK or NACK | • Take down Qs <br> • Update control blocks |
| Read  → <br><br> return code  ← | • If data in $Q_{CA}$, reply with the data and the return code <br> • Otherwise, wait for the data and then reply | | |
| Seek  → <br><br> return code  ← | (Refer to the QVS Seek Processing description) | | |
| Write | Not supported initially | | |

2. Client Server Pacing

* Server Control (SC) transmits data in three modes:
  1. Rush mode: transmit data as fast as possible, subject to the Round-Robin sharing with other active streams.
  2. Normal mode: transmit data according to time and player's playout rate
  3. Pause mode: temporarily halt the transmission

* Client Agent (CA) determines the appropriate mode based on its buffer status. It changes mode when its buffer size crosses certain thresholds as follows:

| Client Agent $Q_{CA}$ Size | Mode Change |
|---|---|
| Crossing $Y_{RN}$ from below | Switch from RUSH to NORMAL |
| Crossing $Y_{NP}$ from below | Switch from NORMAL to PAUSE |
| Crossing $Y_{PN}$ from above | Switch from PAUSE to NORMAL |
| Crossing $Y_{NR}$ from above | Switch from NORMAL to RUSH |

The values of the thresholds, i.e., $Y_{RN}$, $Y_{NP}$, $Y_{PN}$, and $Y_{NR}$ are critical to the
performance of the system. The traditional way of setting these values are based on

The QVS Client Server Protocol describes "PAUSE," "NORMAL," and "RUSH"

transmission modes.  Rush mode is described as "transmit data as fast as possible, subject to

the Round-Robin sharing with other active streams."

The Chen and Chen File History references were not previously discussed by the examiner nor

applied to claim 2 in the prior examination of the patent as discussed above.  Additionally, claim 2 was

not subject to any Final Written Decision in view of Chen and the Chen File History in the IPR

proceedings discussed above.

It is agreed that Chen in view of the Chen File History raises a substantial new question of

patentability with respect to at least dependent claims 2 of the Price patent.  There is a substantial

likelihood that an examiner would consider these new, non-cumulative technological teachings important

in deciding whether or not these claims are patentable.

Accordingly, Chen in view of the Chen File History raises a substantial new question of

patentability with respect to at least dependent claim 2 of the Price patent, a question which has not been

decided in a previous examination of the Price patent nor was there a final holding of invalidity by the

Federal Courts regarding the Price patent.

**Chen in view of Chen File History and Goldhor**

10)     The Request shows that Chen, the Chen File History, and Goldhor provide teachings relevant to

the determination of patentability regarding the following limitations, for claim 2:

*sending to the user system unsent streaming media data elements in the server buffer at a sending*

*rate more rapid than the playback rate.*

In addition to the discussed teachings of Chen and the Chen File History presented

above, Goldhor teaches a streaming source provides packets to a server with a buffer

(Capture Buffer 400) which then forward all packets to a user system (paragraph [0103] of

Goldhor).  Goldhor teaches that the playback rate can be "slowed down," "increased," and be

at a "normal rate" to avoid Capture Buffer overflow or emptying of the Capture Buffer

(paragraphs [0051] and [0052] of Goldhor).


The Chen, Chen File History, and Goldhor references were not previously discussed by the

examiner nor applied to claim 2 in the prior examination of the patent as discussed above, nor were the

references considered against claim 2 in the IPR proceedings that resulted in a Final Written Decision.

It is agreed that Chen in view of the Chen File History and Goldhor raises a substantial new

question of patentability with respect to at least dependent claims 2 of the Price patent.  There is a

substantial likelihood that an examiner would consider these new, non-cumulative technological teachings

important in deciding whether or not these claims are patentable.

Accordingly, Chen in view of the Chen File History and Goldhor raises a substantial new

question of patentability with respect to at least dependent claim 2 of the Price patent, a question which

has not been decided in a previous examination of the Price patent nor was there a final holding of

invalidity by the Federal Courts regarding the Price patent.


### Chen in view of Chen File History and POSITA

11)    The Request attempts to show that Chen, the Chen File History, and the knowledge of a POSITA

provide teachings relevant to the determination of patentability regarding the following limitations, for

claim 2.  The knowledge of a POSITA does not qualify as "prior art patents or printed publications" under

37 C.F.R. 1.501 and thus does not meet the requirements of 37 C.F.R. 1.510(b)(1) which requires "A

statement pointing out each substantial new question of patentability based on prior patents and printed

publications."  As discussed above, Chen in view of Chen File History raises an SNQ with respect to

claim 2.  Thus, Chen in view of Chen File History and POSITA does not raise an additional SNQ because

the actual prior art patents and printed publications involved would be the same.

### Chen in view of Chen File History and Ludwig

12)     The Request shows that Chen, the Chen File History, and Ludwig provide teachings relevant to

the determination of patentability regarding the following limitations, for claim 2:

> *sending to the user system unsent streaming media data elements in the server buffer at a sending*
>
> *rate more rapid than the playback rate.*

> In addition to the discussed teachings of Chen and the Chen File History presented
>
> above, Ludwig teaches that a communication unit can send to another communication unit an
>
> interrupt message containing information about the occurrence of temporary interruptions of
>
> the communication link (column 8, lines 8-16 of Ludwig).  Ludwig teaches that once the
>
> interruption has ended and communication has been reestablished the data packets that were
>
> not received can be sent, and once those packets are received regular transmission of data
>
> packets is restarted (column 12, lines 9-25 and column 13, lines 2-6 of Ludwig).

The Chen, Chen File History, and Ludwig references were not previously discussed by the

examiner nor applied to claim 2 in the prior examination of the patent as discussed above, nor were the

references considered against claim 2 in the IPR proceedings that resulted in a Final Written Decision.

It is agreed that Chen in view of the Chen File History and Ludwig raises a substantial new

question of patentability with respect to at least dependent claims 2 of the Price patent.  There is a

substantial likelihood that an examiner would consider these new, non-cumulative technological teachings

important in deciding whether or not these claims are patentable.

Accordingly, Chen in view of the Chen File History and Ludwig raises a substantial new question

of patentability with respect to at least dependent claim 2 of the Price patent, a question which has not

been decided in a previous examination of the Price patent nor was there a final holding of invalidity by

the Federal Courts regarding the Price patent.

Application/Control Number: 90/014,836                                                   Page 12
Art Unit: 3992

### Chen in view of Chen File History and Blackard

13)     The Request shows that Chen, the Chen File History, and Blackard provide teachings relevant to
the determination of patentability regarding the following limitations, for claim 2:

> *sending to the user system unsent streaming media data elements in the server buffer at a sending*
>
> *rate more rapid than the playback rate.*

> In addition to the discussed teachings of Chen and the Chen File History presented
>
> above, Blackard teaches a streaming model in a communication network in which a pacing
>
> mechanism is implemented in the data processing system to allow a client to pace a streaming
>
> server in a stable way such that a fill level of a client buffer will oscillate around a single
>
> threshold value (Abstract and column 7, line 17-27 of Blackard).  Blackard teaches that the
>
> streaming server transmits data to the client faster than the playback rate to gradually increase
>
> the fill of the client buffer, once the client buffer exceeds a threshold level the pacing
>
> mechanism will pause data at the server (column 5, lines 47-51 and column 9, lines 29-42 of
>
> Blackard).

The Chen, Chen File History, and Blackard references were not previously discussed by the

examiner nor applied to claim 2 in the prior examination of the patent as discussed above, nor were the

references considered against claim 2 in the IPR proceedings that resulted in a Final Written Decision.

It is agreed that Chen in view of the Chen File History and Blackard raises a substantial new

question of patentability with respect to at least dependent claims 2 of the Price patent.  There is a

substantial likelihood that an examiner would consider these new, non-cumulative technological teachings

important in deciding whether or not these claims are patentable.

Accordingly, Chen in view of the Chen File History and Blackard raises a substantial new

question of patentability with respect to at least dependent claim 2 of the Price patent, a question which

has not been decided in a previous examination of the Price patent nor was there a final holding of

invalidity by the Federal Courts regarding the Price patent.

### Chen in view of Chen File History and Allman

14)       The Request shows that Chen, the Chen File History, and Allman provide teachings relevant to

the determination of patentability regarding the following limitations, for claim 2:

> *sending to the user system unsent streaming media data elements in the server buffer at a sending*
>
> *rate more rapid than the playback rate.*

In addition to the discussed teachings of Chen and the Chen File History presented

above, Allman teaches a fast retransmit and fast recovery algorithm for continuously

retransmitting data detected by the server that is lost.  Allman teaches retransmission of what

appears to be a missing segment based on the arrival of duplicate ACKs (pages 6 and 7,

section 3.2 of Allman).

The Chen, Chen File History, and Allman references were not previously discussed by the

examiner nor applied to claim 2 in the prior examination of the patent as discussed above, nor were the

references considered against claim 2 in the IPR proceedings that resulted in a Final Written Decision.

It is agreed that Chen in view of the Chen File History and Allman raises a substantial new

question of patentability with respect to at least dependent claims 2 of the Price patent.  There is a

substantial likelihood that an examiner would consider these new, non-cumulative technological teachings

important in deciding whether or not these claims are patentable.

Accordingly, Chen in view of the Chen File History and Allman raises a substantial new question

of patentability with respect to at least dependent claim 2 of the Price patent, a question which has not

been decided in a previous examination of the Price patent nor was there a final holding of invalidity by

the Federal Courts regarding the Price patent.

### Chen in view of Chen File History and Patel

15)      The Request shows that Chen, the Chen File History, and Patel provide teachings relevant to the

determination of patentability regarding the following limitations, for claim 2:

> *sending to the user system unsent streaming media data elements in the server buffer at a sending*
> *rate more rapid than the playback rate.*
>
>> In addition to the discussed teachings of Chen and the Chen File History presented
>> above, Patel teaches a "bucket" flow control mechanism similar to that of Chen.  Patel
>> teaches that there are high and low water marks associated with said bucket.  If the number of
>> buffered ADU's reaches the low water mark, then the client side tells the server side to send
>> ADU's at faster than real time (page 373, "*Flow Control and Error Recover:*" of Patel).

The Chen, Chen File History, and Patel references were not previously discussed by the examiner

nor applied to claim 2 in the prior examination of the patent as discussed above, nor were the references

considered against claim 2 in the IPR proceedings that resulted in a Final Written Decision.

It is agreed that Chen in view of the Chen File History and Patel raises a substantial new question

of patentability with respect to at least dependent claims 2 of the Price patent.  There is a substantial

likelihood that an examiner would consider these new, non-cumulative technological teachings important

in deciding whether or not these claims are patentable.

Accordingly, Chen in view of the Chen File History and Patel raises a substantial new question of

patentability with respect to at least dependent claim 2 of the Price patent, a question which has not been

decided in a previous examination of the Price patent nor was there a final holding of invalidity by the

Federal Courts regarding the Price patent.

## Scope of Reexamination

16)      Claim 2 will be reexamined as requested.

Application/Control Number: 90/014,836                                          Page 15
Art Unit: 3992

***Conclusion***

17)     Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the

provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.

Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special

dispatch" (37 CFR 1.550(a)).  Extension of time in *ex parte* reexamination proceedings are provided for

in 37 CFR 1.550(c).

     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise

the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No.

8,364,839 throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

     All correspondence relating to this ex parte reexamination proceeding should be directed as

follows:

By U.S. Postal Service Mail to:

     Mail Stop Ex Parte Reexam
     ATTN: Central Reexamination Unit
     Commissioner for Patents
     P.O. Box 1450
     Alexandria, VA 22313-1450

By FAX to:

     (571) 273-9900
     Central Reexamination Unit

By hand to:

     Customer Service Window
     Randolph Building
     401 Dulany St.
     Alexandria, VA 22314

By EFS-Web:

Application/Control Number: 90/014,836                                    Page 16
Art Unit: 3992

     Registered users of EFS-Web may alternatively submit such correspondence via the electronic filing system EFS-Web, at

     https://efs.uspto.gov/efile/myportal/efs-registered

     EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically uploaded) directly into the official file for the reexamination proceeding, which offers parties the opportunity to review the content of their submissions after the "soft scanning" process is complete.

     Any inquiry concerning this communication or earlier communications from the Reexamination

Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central

Reexamination Unit at telephone number (571) 272-7705.

/JOSHUA D CAMPBELL/
Primary Examiner, Art Unit 3992

Conferees:

/ADAM L BASEHOAR/
Primary Examiner, Art Unit 3992

/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992



| Reexamination | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/014,836 | 8364839 |
| | **Certificate Date** | **Certificate Number** |

| Requester Correspondence Address: ☐   Patent Owner ☑   Third Party |
|---|
| VENABLE LLP<br>1290 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10104-3800 |

| **LITIGATION REVIEW** ☑ | JDC<br>(examiner initials) | 22 September 2021<br>(date) |
|---|---|---|
| Case Name | | Director Initials |
| 2:14cv2674 - transferred to 2:19cv01278 | JDC | |
| 2:19cv01278 - Closed | JDC | |
| 2:14cv3456 - Transferred to 19cv05036 | JDC | |
| 19cv05036 - Open | JDC | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| Inter Partes Review | IPR2015-01036 |
| Inter Partes Review | IPR2016-01239 |
| Inter Partes Review | IPR2016-01658 |
| Inter Partes Review | IPR2017-00784 |
| Inter Partes Review | IPR2017-00785 |
| Inter Partes Review | IPR2017-01179 |

| | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/014,836 | 8364839 |
| | **Examiner** | **Art Unit** |
| | JOSHUA D CAMPBELL | 3992 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Reviewed patented file's prosecution history, the request, and proposed prior art | 09/22/2021 | JDC |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

|  |  |
|---|---|
| | |

Doc code: IDS                                                                    PTO/SB/08a (01-10)
Doc description: Information Disclosure Statement (IDS) Filed                      Approved for use through 07/31/2012. OMB 0651-0031
                                                                                 U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
| --- | --- | --- |
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | |

### U.S.PATENTS

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| --- | --- | --- | --- | --- | --- | --- |
| | 1 | 8364839 | | 2013-01-29 | Price (Ex. 1) | |
| | 2 | 5822524 | | 1998-10-13 | Chen (Ex. 2) | |
| | 3 | 6765889 | | 2004-07-20 | Ludwig (Ex. 12) | |
| | 4 | 5918020 | | 1999-06-29 | Blackard (21) | |

If you wish to add additional U.S. Patent citation information please click the Add button.

### U.S.PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| --- | --- | --- | --- | --- | --- | --- |
| | 1 | 20020052967 | | 2002-05-02 | Goldhor (Ex. 16) | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

### FOREIGN PATENT DOCUMENTS

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |

EFS Web 2.1.17

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /J.D.C/

## INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | |

| | 1 | | | | | | | ☐ |
|---|---|---|---|---|---|---|---|---|

If you wish to add additional Foreign Patent Document citation information please click the Add button

### NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc) date, pages(s), volume-issue number(s), publisher, city and/or country where published. | $T^5$ |
|---|---|---|---|
| | 1 | US 5,822,524 Patent Prosecution File History (Ex. 3) | ☐ |
| | 2 | US 8,364,839 Patent Prosecution File History (Ex. 4) | ☐ |
| | 3 | Deposition of Dr. Ketan Mayer-Patel, Duodecad IT Services Luxembourg S.a r.l v. WAG Acquisition, IPR2015-01036 (Apr. 6, 2016) (Ex. 5) | ☐ |
| | 4 | Declaration of Dr. Gareth Loy, I.M.L. SLU v. WAG Acquisition, IPR2016-01658, Paper 2, Ex. 1006 (Aug. 23, 2016) (Ex. 6) | ☐ |
| | 5 | Final Written Decision, Duodecad IT Services Luxembourg S.a r.l v. WAG Acquisition, IPR2015-01036, Paper No. 17 (Oct. 20, 2016) (Ex. 7) | ☐ |
| | 6 | Decision Institution of Inter Partes Review, I.M.L. SLU v WAG Acquisition, IPR2016-01658, Paper 10, (Feb. 28, 2017) (Ex. 8) | ☐ |
| | 7 | Final Written Decision on Remand, WebPower v. WAG Acquisition, IPR2016-01238, Paper No. 28 (Jul. 16, 2020) (Ex. 9) | ☐ |
| | 8 | TCP Congestion Control, Allman et al., RFC2581 (April 1999) (Ex. 10) | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /J.D.C/

| | | Application Number | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>( Not for submission under 37 CFR 1.99) | | Filing Date | |
| | | First Named Inventor | |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket  Number | |

| | 9 | The Internet Standards Process -- Revision 3, Bradner, RFC2026 (Oct. 1996) (Ex. 11) | ☐ |
|---|---|---|---|
| | 10 | SpringerLink Advertisement for Lecture Notes in Computer Science, Network and Operating System Support for Digital Audio and Video (Ex. 13) | ☐ |
| | 11 | Plaintiff's Redacted Reply In Support of Amending the Infringement Contention, WAG Acquisition L.L.C. v. Gattyan Group S.a.r.l., et al., No. 2:14-cv-02832, Dkt. No. 216-6 (D.N.J. filed., Dec. 16, 2019 and dated, Nov. 25, 2019) D. (Ex. 14) | ☐ |
| | 12 | Decision Institution of Inter Partes Review, Duodecad IT Services Luxembourg S.a r.l v. WAG Acquisition, IPR2015-01036, Paper No. 8 (Oct. 23, 2015) (Ex. 15) | ☐ |
| | 13 | Edward A. Fox Webpage Listing CV (Ex. 17) | ☐ |
| | 14 | NMFS: Network Multimedia File System Protocol, Patel et al. (1993) (Ex. 18) | ☐ |
| | 15 | Final Rejection, 16/739,250, Aug.13, 2020 (Ex. 19) | ☐ |
| | 16 | Notice of Abandonment, 16/739,250, Jun. 22, 2021 (Ex. 20) | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | /JOSHUA D CAMPBELL/ | Date Considered | 09/22/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /J.D.C/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

 A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Frank Gasparo/ | Date (YYYY-MM-DD) | 2021-08-25 |
| Name/Print | Frank M. Gasparo | Registration Number | 44,700 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /J.D.C/

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /J.D.C/

# Bibliographic Data

Application No:  **90/014,836**

| | | | |
|---|---|---|---|
| Foreign Priority claimed: | ○ Yes   ● No | | |
| 35 USC 119 (a-d) conditions met: | ☐ Yes   ☑ No | | ☐ Met After Allowance |
| Verified and Acknowledged: | /JOSHUA D CAMPBELL/ | | |
| | Examiner's Signature | Initials | |
| Title: | STREAMING MEDIA DELIVERY SYSTEM | | |

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/25/2021 | 709 | 3992 | 125737.538655 |
| **RULE** | | | |

**APPLICANTS**

**INVENTORS**

8364839,

WAG ACQUISITION L.L.C.  (Assignee), Flanders, NJ, UNITED STATES

VENABLE LLP   ( 3rd Pty Req.), New York, NY, UNITED STATES

**CONTINUING DATA**

This application is a REX of 13385375 02/16/2012 PAT 8364839

13385375 is a CON of 12800177 05/10/2010 PAT 8185611

12800177 is a CON of 10893814 07/19/2004 PAT 7716358

10893814 is a CIP of 09819337 03/28/2001 PAT 6766376

09819337 has PRO of 60231997 09/12/2000 *

(*) Data provided by applicant is not consistent with PTO record

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

**STATE OR COUNTRY**

**ADDRESS**

Ernest D. Buff

Ernest D. Buff & Associates, LLC

231 Somerville Road

Bedminster, NJ 07921

UNITED STATES

**FILING FEE RECEIVED**

$550